CASE NO. 24-4835

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

NOVALPINA CAPITAL PARTNERS I GP S.A.R.L.,

*Petitioner-Appellee*,

v.

TOBIAS READ AND MICHAEL LANGDON,

*Respondents*,

and

TREO ASSET MANAGEMENT LLC AND TREO NOAL GP SARL,

*Intervenor-Appellants*.

_____

On appeal from the
United States District Court for the District of Oregon
Hon. Karin. J. Immergut
Case No. 3:23-mc-00082-IM

_____

**APPELLEE NOVALPINA'S OPPOSITION TO APPELLANTS'
MOTION FOR STAY PURSUANT TO FRAP 8**

_____

Tara J. Plochocki, DCB #989404
**Sequor Law P.A.**
650 Massachusetts Avenue NW
Suite 600
Washington, DC 20001
tplochocki@sequorlaw.com

Joseph Rome
Christopher A. Noel
1111 Brickell Avenue
Suite 1250
Miami, Florida 33131
jrome@sequorlaw.com
cnoel@sequorlaw.com
Tel. 305-372-8282

*Counsel for Petitioner Novalpina*
*Capital Partners I GP S.À.R.L.*

## <u>RULE 26.1 CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Appellee, Novalpina

Capital Partners I GP S.À.R.L, certifies that its sole parent corporation is Novalpina

Capital Partners I Group GP S.À.R.L and that no publicly held corporation owns

10% or more of its stock.

Dated: August 19, 2024                    SEQUOR LAW P.A.

By: <u>*/s/ Tara J. Plochocki*</u>
Tara J. Plochocki
*Attorneys for Appellee*

## **TABLE OF CONTENTS**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ...................................... ii

TABLE OF CONTENTS ......................................................................... iii

TABLE OF AUTHORITIES ....................................................................iv

STATEMENT REGARDING ORAL ARGUMENT ...........................................vi

I.      INTRODUCTION ..........................................................................1

II.     STATEMENT OF JURISDICTION ..................................................4

III.    RELEVANT FACTUAL BACKGROUND ........................................4

    A.  The § 1782 Petition in the District Court ....................................5

    B.  The Respondents' Document Productions & Protective Order .................8

VIII. ARGUMENT ................................................................................9

    A.  Standard of Review.....................................................................9

    B.  Treo's Appeal Is Not Likely to Succeed on the Merits. ...........................10

    C.  Treo Fails to Articulate Any Cognizable
        Irreparable Harm Absent a Stay. ...............................................15

    D.  A Stay Would Harm Novalpina. ..............................................18

    E.  The Public Interest Weighs Against a Stay. .............................19

IX.     CONCLUSION ...........................................................................20

STATEMENT OF RELATED CASES...............................................21

CERTIFICATE OF COMPLIANCE .......................................................22

CERTIFICATE OF SERVICE.............................................................23

# TABLE OF AUTHORITIES

## Cases

*Akebia Therapeutics, Inc. v. FibroGen, Inc.*,
  793 F.3d 1108 (9th Cir. 2015) ................................................20

*Britton v. Co-op Banking Group*,
  916 F. 2d 1405 (9th Cir. 1990) ..............................................15

*Brodheim v. Conerly*,
  32 F. App'x 965 (9th Cir. 2002) ............................................14

*Church of Scientology of Calif. v. United States*,
  506 U.S. 9 (1992) ................................................................17

*Coinbase, Inc. v. Bielski*,
  599 U.S. 736, 744, (2023) ....................................................15

*Coltman v. Carrington Mortg. Servs., LLC*,
  No. 3:24-CV-00368-AA, 2024 WL 2976230 (D. Or. June 13, 2024) .................13

*Couch v. Telescope Inc.*,
  611 F.3d 629, 633 (9th Cir. 2010) .........................................15

*Delay v. Gordon*,
  475 F.3d 1039 (9th Cir. 2007) ..............................................10

*Doi v. Halekulani Corp.*,
  276 F.3d 1131 (9th Cir. 2002) .........................................11, 13

*Fantasyland Video, Inc. v. County of San Diego*,
  505 F.3d 996 (9th Cir. 2007) ...............................................14

*Glock v. Glock, Inc.*,
  797 F.3d 1002 (11th Cir. 2015) ........................................11-12

*Hernandez v. Tanninen*,
  604 F.3d 1095 (9th Cir. 2010) .........................................17-18

*HRC-Hainan Holding Co., LLC v. Yihan Hu*,
  No. 19-mc-80277-TSH, 2020 WL 1274877 (N.D. Cal. Mar. 17, 2020) ........16, 20

*In re Application of Hornbeam Corp.*,
  No. 14-MC-424, 2017 WL 2241522 (S.D.N.Y. May 22, 2017) ..........................20

*In re Noguer*,
  No. 18-MC-498 (JMF), 2019 WL 1034190 (S.D.N.Y. Mar. 5, 2019) ........... 18-19

*In re Platinum Partners Value Arbitrage Fund L.P.*,
  No. 18CV5176 (DLC), 2018 WL 3207119 (S.D.N.Y. June 29, 2018) ...............18

iv

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ........................................................................5, 7
*John M. Floyd & Assocs. v. TAPCO Credit Union*,
   550 F. App'x 359 (9th Cir. 2013) .........................................................11
*Lazo v. Wash. Mut. Bank*,
   10 F. App'x 553 (9th Cir. 2001) ..........................................................12
*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) ...............................................................15
*Maxcrest Ltd. v. United States*,
   2016 WL 6599463 (N.D. Cal. Nov. 7, 2016) ......................................16
*Nikon Corp. v. GlobalFoundries U.S., Inc.*,
   No. 17-MC-80071-BLF, 2017 WL 4865549 (N.D. Cal. Oct. 26, 2017)..16, 17, 20
*Nken v. Holder*,
   556 U.S. 418 (2009) ..........................................................................2, 9
*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
   No. 3:16-CV-00495-HZ, 2016 WL 9226389 (D. Or. Oct. 5, 2016) ....................10
*Schoenberg v. Fed. Bureau of Investigation*,
   2 F.4th 1270 (9th Cir. 2021) ................................................................10
*United States v. Jicarilla Apache Nation*,
   564 U.S. 162, 169 n.2 (2011) ..............................................................18

**Statutes**

28 U.S.C. § 1291 ...................................................................................4
28 U.S.C. § 1332 ...................................................................................4
28 U.S.C. § 1782 ...........................................................................*passim*

**Rules**

Fed. R. Civ. P. 26 ...............................................................................17
Fed. R. Civ. P. 60 ...............................................................................14

**Other Authorities**

Wright & Miller,
   11 Fed. Prac. & Proc. Civ § 2859 (3d ed.) ........................................14
Wright & Miller,
   11 Fed. Prac. & Proc. Civ. § 2904 (3d ed.) .........................................9

## STATEMENT REGARDING ORAL ARGUMENT

Appellee, Novalpina Capital Partners I GP S.À.R.L., does not believe that oral argument will assist this Court in determining the narrow issue raised by Appellants in their motion for stay pending appeal. The ruling of the District Court below that is the subject of this appeal was rendered without hearing and based solely on record evidence, as was the District Court's denial of a stay pending appeal.

## I.    INTRODUCTION

Treo NOAL GP S.À.R.L and Treo Asset Management LLC's (collectively "Treo" or "Intervenors") Motion for a Stay Pending Appeal (the "Motion") fails to adduce any evidence justifying a stay of the District Court's order granting Novalpina Capital Partners I GP S.À.R.L.'s ("Novalpina" or "Appellee") motion to compel production of additional documents from Respondents Michael Langdon, Tobias Read, and the Oregon Public Employees Retirement Fund ("Respondents").

From the beginning of this matter, Treo has not wanted Novalpina—to whom it owes hundreds of millions of dollars pursuant to contract—to obtain any discovery for use in any foreign proceedings abroad. Novalpina filed its Petition seeking discovery for use in its defense against one of dozens of lawsuits Treo filed against Novalpina and related persons. The lawsuits are part of Treo's ongoing war of attrition in which it has sought to grind Novalpina and affiliated persons down until they give up their contractual rights. Thus far, they have refused to do so. Quite the contrary: the Petition explicitly sought documents for use in a fraud claim that Novalpina will file in Luxembourg alleging that Treo and Respondents never intended to honor Novalpina's contractual rights. Thanks to Respondents' partial document production, Novalpina now has some of the documents to prove it.

The documents revealed further misconduct by Treo. In the High Court in England, Treo has falsely claimed that alleged misconduct by Novalpina's founders,

1

Stefan Kowski and Bastian Lueken, effectively forced Treo to sell off a Fund asset two years early. In fact, *non-confidential* emails produced in this proceeding show that Treo and its founding partner Finbarr O'Connor, contrary to their sworn statements, began sale discussions with the ultimate buyer many months earlier, for reasons entirely unrelated to Messrs. Kowski and Lueken.

Respondents' remaining production appears to be minimal—they intend to produce a privilege log, redacted documents, and any documents improperly tagged as privileged during the initial review—but, based on Treo's desperation to stay production, damning evidence has yet to be produced.

Treo's desire to conceal its bad acts does not justify the denial of disclosure, not even temporarily. As the District Court remarked early on, "I understand why [you] might not want petitioner to be able to get this discovery [from Oregon]; but, obviously—but that didn't seem, to me, a very persuasive argument." Tr. 17:16-18, App.D.E.9.5. Treo's unsuccessful motion to reconsider or to amend the protective order was more of the same, and the District Court properly found that the motion was without merit. It also swiftly denied Treo's motion for a stay pending appeal, ruling that "based on a consideration of the [*Nken*] factors and the record in this case, this Court concludes that a stay of the Order is inappropriate." D.E.70. This Court should do the same.

Treo's underlying motion arose out of its displeasure with Novalpina using disclosed documents in foreign proceedings where they are relevant, with the express permission of Respondents. The Protective Order negotiated between the State of Oregon and Novalpina expressly provides that the documents may be used by "Interested Part[ies]" in "litigation relating to the events described in the Petition." Prot. Order at 4, ¶ 4.1, App.D.E.9.9. The proposed protective order sat on the docket for three weeks; Treo made no objection. After the Court entered the Order, Respondents produced documents showing that Treo had been dishonest in its claims in multiple foreign proceedings, and these documents were used in those proceedings in compliance with the Protective Order.

This did not suit Treo, or, presumably, the limited partners in the Fund, so Treo tried to undo the entire proceeding and filed the motion below. In so doing, Treo recast its original opposition to the Petition as concern about "misuse" of the documents in foreign proceedings other that the two specified in the Petition and claimed that Novalpina misled the Court. The record demonstrates that both contentions are false, and the District Court rejected Treo's motion with little trouble.

Now, its Motion for a stay, Treo rewrites history a second time. It claims—for the first time and without evidence—that its own confidential information is at issue in the forthcoming production. Treo only claims concerns about confidentiality now that it needs to show irreparable harm to justify a stay. None of Treo's previous

3

filings reflect such a concern. The only confidentiality concern ever raised was a remark in Treo's reply brief below about Mr. Kowski having "confidential *state* [of Oregon] documents." D.E.57 at 8. Whatever Respondents' confidentiality interests, Treo lacks standing to assert them here.

On this record, there is no evidence at all that Oregon's remaining document production 1) actually contains Treo's proprietary information, business secrets, or personal information; 2) why the Protective Order, which limits public disclosure of confidential documents, is insufficient to protect information marked confidential; or 3) that Oregon cannot produce any of its remaining materials without producing Treo's own confidential information.

Treo cannot show a likelihood of success on appeal and has not shown the irreparable harm supporting a stay. Its Motion should be denied.

## II.    STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Treo is timely appealing a final order denying its motion for reconsideration or, in the alternative, to modify a protective order rendered by the District Court on July 30, 2024.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## III.    RELEVANT FACTUAL BACKGROUND

The Petition arises out of a dispute relating to the takeover of a private equity fund by Treo NOAL GP, a wholly-owned subsidiary of Treo Asset Management.

4

Novalpina is the original general partner of that fund, and it and related entities are owed payment of substantial contractual entitlements, called the Removal Entitlement and Sponsor Commitment. *See* Mot. to Compel at 5, App.D.E.9.11. These payments are worth hundreds of millions of dollars. *Id.* at 5-6. Treo and the fund's Limited Partner Advisory Committee ("LPAC") breached the fund's limited partnership agreement in order to install Treo as new general partner of the fund without appointing an independent valuer to value the fund and determine the Removal Entitlement and Sponsor Commitment and without paying the Sponsor Commitment to Novalpina (which constitute conditions precedent to the appointment of any new general partner). *Id.* Only after the takeover did Treo and the LPAC promise to agree on valuation principles for the payments and to appoint an independent valuer to calculate the payments. *Id.* at 5-9.

Discovery obtained in this action so far has already confirmed that Treo and the LPAC never intended to make the payments according to the agreed principles and, because of this, ultimately refused to appoint an independent valuer. *Id.* They instead had already formed a "takedown plan" of the fund's founder, which has manifested in Treo filing numerous sham lawsuits. *Id.*

## A.     The § 1782 Petition in the District Court

On January 27, 2023, Novalpina filed its § 1782 Petition to obtain documents for use in defense against a lawsuit Treo filed against it in the District Court of

Luxembourg as well as a contemplated fraud lawsuit to be filed against Treo and members of the LPAC. Respondents include the Oregon Public Employees Retirement Fund ("OPERF"), a limited partner in the fund, and Michael Langdon, the Director of Private Investments and Chair of the LPAC.

Treo opposed the Petition on the basis that Novalpina and Respondents were parties to a pending lawsuit in Luxembourg, and thus the first *Intel* discretionary factor—which asks whether the discovery sought is obtainable in the foreign tribunal—should weigh against granting the Petition. App.D.E.9.6.[1] Treo did not express concern about the use of confidential documents in any pending proceeding.

Both Treo and Novalpina mentioned a variety of other proceedings pending in Luxembourg and other countries. Novalpina was candid about the possibility that the documents could be useful in other proceedings. For example, Novalpina informed the court that "in the time since the Petition was filed, Treo has filed two new lawsuits against Novalpina in Luxembourg in which the discovery sought is directly relevant. Should the Court deny relief now, Petitioner respectfully requests leave to amend the Petition to include the new lawsuits." Reply in Support of Pet., D.E.30 at 2.

---

[1] Treo also averred that Novalpina already had made a discovery request in Luxembourg, but this is irrelevant. *See* Declaration of Nicolas Thieltgen, ¶¶ 4-5, Ex. 1, filed herewith. Novalpina asked the court to grant discovery on fund assets *if* it wins the case and only then if there is not enough money in the fund to pay the judgment. *Id.* That case is ongoing.

Novalpina had no plans to use the documents other than in the manner then-outlined in the Petition. There is no evidence to the contrary. Treo cites a May 5, 2023, telephonic hearing on Treo's Motion to Intervene in which the District Court asked Novalpina whether Michael Langdon, a respondent, was a party to a pending proceeding for which information was sought, and Petitioner responded that he was "not in the Luxembourg litigation that we're seeking evidence for," but that he would be a named party in Novalpina's contemplated fraud claim. App.D.E.9.1 at 8.[2]

The District Court expressly acknowledged that Respondents and Novalpina were already parties to a proceeding pending in the Luxembourg District Court and that Mr. Langdon would likely be a defendant in contemplated fraud litigation. *Id.* Citing authority that the first *Intel* factor's central focus is whether the discovery is "obtainable" in the foreign proceeding, the District Court found that Respondents "have not shown that the information could be obtained" in the proceeding to which they and Novalpina were parties. Thus, the District Court found that the first *Intel* factor weighed in Novalpina's favor. *Id.* at 5 (weighing all four factors in favor of relief).

---

[2] Novalpina never disclaimed the possibility that the documents produced could be used in another proceeding. No party requested a limitation of produced documents to specific foreign proceedings. Moreover, Novalpina could not know what the documents would contain, their significance under Luxembourg law, or that Treo would continue to file new proceedings against it. Accordingly, when the District Court granted the Petition on August 10, 2023, it did not limit the use of the documents to specific proceedings. App.D.E.9-8.

**B.** <u>**The Agreed Protective Order**</u>

On December 27, 2023, Respondents sent a draft protective order to Novalpina.[3] Decl. of Tara J. Plochocki Ex. 3. Novalpina suggested modifications, including confirmation that confidential documents could be used by:

> The Parties, and every employee, director, officer, manager, direct or indirect shareholder, associate or affiliate, representative, agent of any party to this action (each an "Interested Party"), as well as attorneys of the Parties and Interested Parties in litigation relating to the events described in the Petition . . . for the purposes of litigation relating to the events described in the Petition.

App.D.E.9.10, ¶¶ 4.1(b), 4.2. Respondents agreed and filed the stipulated Protective Order on January 24, 2024. D.E.33. Treo did not seek any modifications in the three weeks before the District Court granted the motion and entered the Protective Order. App.D.E.9.10 (entered on Feb. 13, 2024).

After entry of the Protective Order, Novalpina and two interested parties used several of the produced documents. *See* Mot. to Compel, at 3-4 App.D.E.9.10. Treo and Respondents claimed that such use was impermissible, the Protective Order notwithstanding, and objected to completing the production. Novalpina moved to compel. *Id.* Treo moved for reconsideration of the § 1782 Order, asking the District

---

[3] Respondents made productions on December 8 and 15, 2023, January 26, 2024, and February 17, 2024. Decl. of Tara J. Plochocki at 2-3, Exs. 1-2, 4-5, App.D.E.11.1. According to Respondents, all that remains to be produced is a privilege log, documents redacted subject to privilege, and any documents improperly tagged as privileged during the initial review. *Id.* Ex. 6.

Court to vacate it completely or, in the alternative, to amend the Protective Order to limit the use of all documents to two proceedings. App.D.E.9.11. The Court denied Treo's motion in its entirety, as discussed below.

## VIII.  ARGUMENT

Treo's appeal is simply the latest chapter in its ongoing effort to prevent documents from being produced and used to prove Treo's dishonesty. The Court should not reward their interference with Respondents' ongoing document production. Treo does not qualify for a stay in any case:  it will not prevail on the merits and cannot show irreparable harm.

### A.  <u>Standard of Review</u>

In determining whether to grant a stay pending appeal, a court must consider: 1) "whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits"; 2) the likelihood the "applicant will be irreparably injured absent a stay"; 3) "whether issuance of the stay will substantially injure" other interested parties; and 4) "where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (same). "[B]ecause the burden of meeting the standard is a heavy one, more commonly stay [pending appeal] requests will be found not to meet this standard and will be denied." WRIGHT & MILLER, 11 FED. PRAC. & PROC. CIV. § 2904 (3d ed.). If a movant fails to carry its burden on the first two factors, it is unnecessary to address

the remaining two factors. *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 2016 WL 9226389, at *3 (D. Or. Oct. 5, 2016) (denying stay).

**B.** **Treo's Appeal Is Not Likely to Succeed on the Merits.**

The parties agree that the District Court's ruling on the motion for reconsideration or to amend the protective order will be reviewed for abuse of discretion. When reviewing for abuse of discretion, "[t]he judgment below must be affirmed unless (1) [the Court has] a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors, (2) the district court applied the wrong law, or (3) the district court rested its decision on clearly erroneous findings of fact." *Delay v. Gordon*, 475 F.3d 1039, 1043 (9th Cir. 2007); *Schoenberg v. Fed. Bureau of Investigation*, 2 F.4th 1270, 1275 (9th Cir. 2021) (an appellate court will not reverse unless the result was "illogical, implausible, or without support in inferences that may be drawn from the record.").

Treo conjures three purported errors in the District Court's order; none constitutes an abuse of discretion.

*First*, Treo argues that the District Court erred in finding that "[n]o party appears to dispute that Respondents must comply with Petitioner's subpoenas" because Treo's motion for reconsideration asked the District Court to vacate the authorization for the subpoenas. Mot. at 10. Treo misreads the Order. The quoted

10

language comes from a subsection discussing only the motion to compel, and the only "parties" litigating that motion were Novalpina and Respondents. Order at 7.

Treo admits that it did not challenge the motion to compel itself, but sought to moot it by asking the District Court "to withdraw its authorization for the subpoenas." Mot. at 14. Collaterally attacking the subpoenas is not the same as objecting to the subpoenas themselves or filing an opposition to the motion to compel. *See Doi v. Halekulani Corp.*, 276 F.3d 1131, 1140 (9th Cir. 2002) noting that failure to raise an objection waives the issue on appeal). Even if the District Court erred by not crediting Treo with an implied objection to the motion to compel, such error is harmless, as the natural consequence of a denial of Treo's motion is Respondents' continued compliance with the subpoenas. *See John M. Floyd & Assocs. v. TAPCO Credit Union*, 550 F. App'x 359, 361 (9th Cir. 2013) (disregarding finding that motion to reconsider was untimely because the court considered and decided the motion on the merits).

*Second*, Treo argues that the District Court erred in dismissing its evidence of Novalpina's "'chicanery' without addressing *at all* the substantial evidence" that Treo claims it presented in its motion for reconsideration. Mot at 11. Not only did the District Court address the allegations, it stated: "this Court does not find that Intervenors and Respondents have provided evidence of Petitioner's "chicanery," to justify such extraordinary relief." Order at 10 (citing *Glock v. Glock, Inc.*, 797 F.3d

1002 (11th Cir. 2015)); *see also Lazo v. Wash. Mut. Bank*, 10 F. App'x 553 (9th Cir. 2001) (finding no abuse of discretion in denial of motion to reconsider that merely reiterated meritless arguments and failed to provide newly discovered evidence). The District Court also cited *Glock* for the proposition that parties concerned about the broad use of documents should "seek[] to negotiate a protective order," which they did. *Id.* at 7. The Court discredited the argument that there could have been "reliance" on any purported "limitation" by Petitioner before the Court granted the § 1782 petition because the Protective Order "plainly allows for the use of materials beyond the proceedings identified in the § 1782 petition" and "this Court's Order did not limit the use of the materials to the two proceedings identified by Petitioner, and neither Respondents nor Treo requested such a limitation in their oppositions." *Id.* at 8. In other words, there can be no complaint about the Novalpina's use of the documents on this record.[4]

*Third*, Treo argues that the District Court erred in concluding that the protective order was negotiated by "sophisticated parties" when Treo was not part of that negotiation. Mot. at 11. That Treo did not itself negotiate the Protective Order is irrelevant. Treo had ample opportunity to object to or oppose the Order in its

---

[4] Relevantly, *Glock* also states that "[t]he § 1782 court, having entered the § 1782 order and . . . the governing protective order, is in the best position to quickly evaluate allegations of improper use of § 1782 and the meaning of any governing protective order." *Glock*, 797 F.3d at 1009. The District Court did exactly this.

proposed form. As the Order states, the motion for the Protective Order was filed in January 2024. Order at 3 (citing D.E.33). The Court rejected the motion and directed "the party or parties seeking protection" to re-file. D.E.34. Respondents filed a revised motion for Protective Order on February 3. D.E.35. Respondents justified the Protective Order, in part, on the basis that "TREO Asset Management, whose confidential information may be produced under the Subpoenas, has expressly requested that OPERF take steps to preserve the confidentiality of certain information that may be provided in response to the Subpoenas." D.E.35 at 4. The Court did not grant that motion until February 13, 2024. D.E.36. Treo—indisputably sophisticated parties themselves—had 20 days to oppose or object to the proposed Protective Order. Treo did not.

It is black letter law in this Circuit that "if a party fails to raise an objection to an issue before judgment, he or she waives the right to challenge the issue on appeal." *Doi*, 276 F.3d at 1140. Failures to oppose motions are treated as consent, including in the District of Oregon. *Coltman v. Carrington Mortg. Servs., LLC*, 2024 WL 2976230, at *1 (D. Or. June 13, 2024) (no relief for party that failed to oppose motion). Thus, where a court enters an order approving a stipulation or settlement and no objections are made, a party may not challenge that settlement or order on appeal. If Treo delegated the protection of its unspecified confidential information to Respondents and then failed to timely object to the resulting order, it cannot now

complain to the Court, and it certainly is not entitled to belatedly attempt to reverse the Protective Order on appeal.[5]

Treo further argues that the District Court abused its discretion by failing to consider its distinct arguments apart from those of Respondents, namely, "the independent harms caused to Treo." Mot. at 15. But Treo never raised any unique "interests or potential harms" in its briefing before the District Court, and it does not cite any now. App.D.E.9.12. Treo only argued that there were implied limitations on the documents' use. *Id.* at 13-14. Because Respondents made precisely the same arguments as Treo, the District Court was justified in disposing of both parties' motions to amend the protective order on the same reasoning. *Cf.* D.E.52 (Respondent's motion).

---

[5] Treo's motion for reconsideration was also doomed because it did not meet Federal Rule of Civil Procedure 60(b)'s requirement of presenting "newly discovered evidence." The only evidence Treo cited was that 1) Petitioner grounded its Petition on two qualifying foreign legal proceedings; and 2) that documents obtained from Respondents were used in accordance with the later negotiated Protective Order. "Newly discovered evidence" cognizable on a Rule 60 motion "must have been in existence at the time of the trial," and the post-ruling use of produced documents by definition did not exist at the time of the grant of § 1782 relief. WRIGHT & MILLER, 11 FED. PRAC. & PROC. CIV. § 2859 (3d ed.); *see also Fantasyland Video, Inc. v. County of San Diego*, 505 F.3d 996 (9th Cir. 2007) (91% collapse in business after judgment not "newly discovered evidence"). The lack of any newly discovered evidence is fatal to the motion for reconsideration and this appeal. *See, e.g., Brodheim v. Conerly*, 32 F. App'x 965 (9th Cir. 2002) (dismissing appeal of Rule 60(b) motion without "mistake, inadvertence, surprise, excusable neglect, [or] newly-discovered evidence").

Finally, Treo's argument that the District Court's reliance on case law from other circuits in the absence of Ninth Circuit precedent directly on point *per se* creates a "substantial question" on appeal is absurd. Mot. at 22. The District Court relied on Second and Eleventh Circuit precedent Treo cited as authority *in its own motion*. *See* App.D.E.9.11 at 11-12 (citing *Accent Delight* and *Glock*). Moreover, the District Court's interpretation of the scope of its own discovery orders does not give rise to "questions of first impression in this Circuit." Mot. at 2; *see Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (noting in context of interlocutory appeal that "just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion"). [6]

## C. Treo Fails to Articulate Any Cognizable Irreparable Harm Absent a Stay.

Treo's Motion fails to present evidence of any injury at all, let alone evidence satisfying the "bedrock requirement" of showing that there will be irreparable injury to Treo. *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011). Treo argues,

---

[6] Treo miscites caselaw to suggest that "an appeal raises a 'substantial question'— and thus satisfies the first prong of the standard applicable to a motion for a stay pending appeal—where it 'raised issues of first impression.'" Mot. at 17 (citing *Britton v. Co-op Banking Group*, 916 F. 2d 1405 (9th Cir. 1990)). In fact, all *Britton* held was that an appeal from the denial of a motion to compel arbitration does not automatically stay district court proceedings. *See Britton*, 916 F. 2d at1412, *abrogated in part by Coinbase, Inc. v. Bielski*, 599 U.S. 736, 744, (2023).

without evidence, that it will be harmed by Respondents' remaining production of documents "because once documents are produced, it is all but impossible to retrieve them and erase the information learned by an adversary through their review." Mot at 17. The only harm is that the documents show that Treo has been a bad actor. *See* Mot. to Compel, D.E.38 at 1-9. But the production of probative documents is not legally cognizable harm, nor is it irreparable harm warranting a stay. "The mere fact that information, once disclosed, cannot be 'undisclosed' is . . . not enough by itself to warrant a finding of irreparable harm." *HRC-Hainan Holding Co., LLC v. Yihan Hu*, 2020 WL 1274877, at *5 (N.D. Cal. Mar. 17, 2020) (internal citations omitted). If it were, then § 1782 orders would be stayed in every appeal; they are not. *See id.* (denying motion for stay of discovery pending appeal of grant of § 1782 application); *see also Nikon Corp. v. GlobalFoundries United States, Inc*., 2017 U.S. Dist. LEXIS 177899, at *6 (N.D. Cal. Oct. 26, 2017) ("The burden of complying with a subpoena does not constitute irreparable injury.").

Where courts have found irreparable harm warranting a stay of disclosure, the party opposing disclosure specifically identified sensitive information that was not subject to a protective order. Treo's own authorities are not to the contrary. *See, e.g. Maxcrest Ltd. v. United States*, 2016 WL 6599463, at *9-10 (N.D. Cal. Nov. 7, 2016) (granting stay after noting that respondent identified specific "privacy interests will be violated if the IRS obtains its Google account user information."). Here, Treo

makes a conclusory reference to its "confidential information," but a court cannot make a finding that there would be irreparable harm where the movant has "not submitted a declaration or other evidence showing that these documents . . . [contain] confidential business materials or explaining how disclosure of the documents would harm [them]." Mot. at 1, 17; *Nikon Corp. v. GlobalFoundries United States, Inc.*, 2017 U.S. Dist. LEXIS 177899, at *6 (N.D. Cal. Oct. 26, 2017). No one—not Respondents and certainly not Treo—has established that the remaining documents contain any sensitive or confidential information at all.[7]

Treo cites cases about confidentiality, but they have no relevance here. In *Church of Scientology of Calif. v. United States*, the court merely held that the power to order the "Government to destroy or return any and all copies it may have in its possession" meant that taxpayer's suit over wrongfully disclosed tax records was not moot. 506 U.S. 9, 12–13 (1992). In *Hernandez v. Tanninen*, this Court vacated an overbroad district court order "finding an unlimited waiver of the attorney-client and

---

[7] In its reply in support of its motion for an administrative stay, Treo made a conclusory statement that it should not have to "preview" its confidential documents and suggested that certain subpoena requests on their face seek confidential documents. App.D.E.12.1 at 3. Treo does not explain why information related to the sale "of the Fund's assets" or "the hiring of Intervenors" would be in any way legally protectible from disclosure, or why the Protective Order, which prohibits public disclosure, is insufficient. It cites no authority excusing it from articulating why that information would give rise to the need for a stay. More basically, there is no evidence that such documents will be in the forthcoming production. If Treo were truly worried about revealing such information in briefing then there are procedures to do so *in camera* or under seal. *E.g.*, Fed. R. Civ. P. 26(c).

work product privileges." 604 F.3d 1095, 1102 (9th Cir. 2010). These cases have nothing to do with irreparable harm, much less in the context of a stay of a third party's production of documents pending appeal.

*Second*, Treo argues that, absent a stay, the appeal would become moot because the documents will have already been produced, thus *per se* constituting irreparable harm. Mot. at 18. Potential mootness in this case is not harmful where the disclosure challenged does not cause cognizable harm. *See In re Platinum Partners Value Arbitrage Fund L.P.*, 2018 WL 3207119, at *7 (S.D.N.Y. June 29, 2018) ("A showing of irreparable harm requires more than the possibility of mootness, particularly because courts have the ability to fashion at least some form of relief if a discovery production order is reversed on appeal.") (citing *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169 n.2 (2011)).

### D. A Stay Would Harm Novalpina.

Delay poses a significant harm to Novalpina and risks that the underlying proceeding will become moot because Treo's ongoing battle of attrition will drain it of both time and resources, both of which are finite. Because "[a] stay on appeal of discovery orders delays litigation, adds uncertainty to the proceedings, and increases the costs of litigation, [s]tays are rarely issued, even in appeals of § 1782 proceedings." *In re Platinum Partners* 2018 WL 3207119, at *8). *See also In re*

18

*Noguer*, 2019 WL 1034190, at \*5 (S.D.N.Y. Mar. 5, 2019) (refusing to stay 1782 proceeding because of risk of mootness).

Novalpina filed this action 20 months ago, in January 2023. It has been waiting for Respondents' discovery for over a year. Production has been at a standstill for the last seven months because Treo and Respondents manufactured a dispute over a Protective Order to which they expressly or impliedly agreed. Petitioner has had to defend itself in the foreign litigation without the benefit of the discovery this Court awarded, and it is in a holding pattern on its fraud claims.[8] This factor thus weighs against granting a stay.

### E.    The Public Interest Weighs Against a Stay.

Treo argues that there are public interests in preserving the resources of the State of Oregon by not having "to devote additional resources to collecting and producing documents" as well as the resources of the District Court by not having to deal with further litigation. Mot. at 20. Apart from the fact that Oregon routinely responds to similar records requests, and Respondents have acknowledged that they are essentially finished with the production and, given that this Court granted an administrative stay the day before compliance was due, there is little if anything left for Oregon to do.

---

[8] Contrary to Treo's claim, Novalpina has been developing its fraud claim. *See* Mot. to Compel at 5-9, App.D.E.9.11 (citing only non-confidential documents).

19

Treo avers that the public interest would be vindicated by preventing abuse of § 1782 where the discovery "circumvent[s] the law of the foreign forum that Petitioner selected" and "does not provide a mechanism for reciprocal discovery." Mot. at 20. But this is just rehashing the rationale of Treo's original opposition to the Petition, which the District Court rejected, and which other courts regularly reject in the § 1782 context.

Section 1782 is supposed to "provid[e] efficient assistance to participants in international litigation." *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1110 (9th Cir. 2015). Courts thus deny stays in § 1782 proceedings to serve the "public interests in justice, fair play, and full disclosure" of "the truth in foreign actions." *In re Application of Hornbeam Corp.*, 2017 WL 2241522, at *2 (S.D.N.Y. May 22, 2017) (citations omitted); *HRC-Hainan Holding Co., LLC v. Yihan Hu*, 2020 WL 1274877, at *6 (N.D. Cal. Mar. 17, 2020) (denying stay in public interest). While Treo "clearly would prefer that the Ninth Circuit have an opportunity to review its challenges [] before producing the discovery in question, that preference does not implicate the public interest." *Nikon Corp.*, 2017 WL 4865549, at *3.

## IX. CONCLUSION

For the foregoing reasons, the Court should deny the Motion.

Date: August 19, 2024                    By: */s/ Tara J. Plochocki*

## <u>STATEMENT OF RELATED CASES</u>

*9th Cir. Case Number(s): No. 24-4835,*

The undersigned attorney or self-represented party states the following:

I am unaware of any related cases currently pending in this Court.

Date: August 19, 2024          By: <u>*/s/ Tara J. Plochocki*        </u>

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the formatting requirements of the type-volume limitation set forth in Federal Rule of Appellate Procedure 27(d)(2)(a) and the page limitation set forth in Ninth Circuit Rule 27(a)(2)(a). This brief uses proportional typeface and 14-point font, contains 5,102 words, and is 20 pages.

Date: August 19, 2024        By: _/s/ Tara J. Plochocki_____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 19, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date: August 19, 2024          By: _/s/ Tara J. Plochocki_____