No. 24-4835

# In the United States Court of Appeals
# for the Ninth Circuit

NOVALPINA CAPITAL PARTNERS I GP S.A.R.L,

*Petitioner - Appellee,*

AND

TREO ASSET MANAGEMENT, LLC AND TREO NOAL GP,

*Intervenor - Appellant,*

v.

TOBIAS READ; MICHAEL LANGDON,

*Respondents - Appellees.*

On Appeal from the United States District Court
for the District of Oregon
No. 3:23-mc-00082-IM
Hon. Immergut

## APPELLEE NOVALPINA CAPITAL PARTNERS I GP S.A.R.L.'S RESPONSE BRIEF

Tara J. Plochocki, DCB #989404
Sequor Law P.A.
650 Massachusetts Ave NW
Ste 600
Washington, DC 20001
tplochocki@sequorlaw.com

Joseph Rome
Christopher A. Noel
1111 Brickell Ave Ste 1250
Miami, Florida 33131
jrome@sequorlaw.com
cnoel@sequorlaw.com
Tel. 305-372-8282

Attorneys for Petitioner - Appellee
NOVALPINA CAPITAL PARTNERS I GP S.A.R.L

**Rule 26.1 Corporate Disclosure Statement**

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Appellee, Novalpina Capital Partners I GP S.À.R.L, certifies that its sole parent corporation is Novalpina Capital Partners I Group GP S.À.R.L and that no publicly held corporation owns 10% or more of its stock.

Sequor Law

Dated: January 27, 2025    By: /s/ Tara Plochocki

Attorney for Petitioner - Appellee
NOVALPINA CAPITAL
PARTNERS I GP S.A.R.L

i

# TABLE OF CONTENTS

Page

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ........................................ i

TABLE OF CONTENTS ................................................................................ ii

TABLE OF AUTHORITIES ........................................................................... iv

JURISDICTIONAL STATEMENT ................................................................... 1

STATEMENT REGARDING ORAL ARGUMENT ............................................. 1

INTRODUCTION ........................................................................................ 2

ISSUES PRESENTED .................................................................................. 4

RELEVANT FACTUAL BACKGROUND ......................................................... 4

I.     The Underlying Breach of Contract and Fraud and Related Litigation ......... 4

II.    The § 1782 Petition in the District Court ....................................... 9

III.   The Agreed Protective Order......................................................... 15

IV.    Treo's Effort to Overcome Waiver of Objections to the Protective Order ... 16

SUMMARY OF THE ARGUMENT ............................................................. 18

ARGUMENT ............................................................................................ 18

I.     TREO LACKS STANDING TO APPEAL ................................................ 18

       A.     Treo Has No Concrete Injury ............................................. 19

       B.     That Treo Was Permitted to Intervene Does Not Give It
              Standing to Appeal ........................................................... 20

       C.     Treo's Appeal Is a Belated Attempt to Appeal the District
              Court's Original Order Granting the § 1782 ...................... 22

II.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION ............. 23

       A.     The District Court's Denial of Treo's Motion for
              Reconsideration Was Within Its Discretion........................ 24

              1.     The District Court Articulated and Applied the
                     Correct Legal Standard for a Motion for Reconsideration ...... 24

              2.     The District Court Expressly Considered Treo's
                     Purported New "Evidence"........................................ 26

              3.     The District Court Did Not Err in Finding a Lack of
                     Dispute about Compliance with the Subpoenas..................... 29

4.    Treo Did Not Present Newly Discovered Evidence .................. 30

5.    Petitioner's Proper Use of Evidence Obtained Under
      Section 1782 Does Not Shift the *Intel* Analysis, Nor
      Could It ................................................................................. 34

B.    The District Court's Denial of Treo's Motion to Modify the
      Protective Order Was Within Its Discretion ...................................... 37

1.    The District Court Applied the Correct Legal
      Standard to the Motions to Modify the Protective Order ......... 37

2.    Treo Waived Objections to the Protective Order .................... 42

CONCLUSION ................................................................................................. 44

STATEMENT OF RELATED CASES .................................................................. 45

CERTIFICATE OF COMPLIANCE ...................................................................... 46

CERTIFICATE OF SERVICE ............................................................................. 47

## Table of Authorities

Page

**Cases:**

*Achcar-Winkels v. Lake Oswego Sch. Dist.*
No. 3:15-cv-00385-ST
2015 U.S. Dist. LEXIS 199386 (D. Or. Dec. 11, 2015) .................................. 30

*B.C. v. Plumas Unified Sch. Dist.*
192 F.3d 1260 (9th Cir. 1999) ................................................. 22

*Beck v. U.S. Dep't of Com.*
982 F.2d 1332 (9th Cir. 1992) ................................................. 22

*Bouvier v. Adelson (In re Accent Delight Int'l Ltd.)*
869 F.3d 121 (2d Cir. 2017) ........................................... 28, 32, 40, 41

*Brodheim v. Conerly*
32 F. App'x 965 (9th Cir. 2002) ................................................. 31

*Coastal Transfer Co. v. Toyota Motor Sales*
833 F.2d 208 (9th Cir. 1987) ................................................. 44

*Coltman v. Carrington Mortg. Servs., LLC*
2024 WL 2976230 (D. Or. June 13, 2024) ................................................. 43

*Delay v. Gordon*
475 F.3d 1039 (9th Cir. 2007) ................................................. 23

*Doi v. Halekulani Corp.*
276 F.3d 1131 (9th Cir. 2002) ................................................. 30, 43

*Fantasyland Video, Inc. v. Cnty. of San Diego*
505 F.3d 996 (9th Cir. 2007) ................................................. 31

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*
27 F.4th 136 (2d Cir. 2022) ................................................. 28, 29

*Flick v. Liberty Mut. Fire Ins. Co.*
205 F.3d 386 (9th Cir. 2000) ................................................. 24

*Foltz v. State Farm Mut. Auto. Ins. Co.*
331 F.3d 1122 (9th Cir. 2003) ................................................. 41

*Four Pillars Enters. Co. v. Avery Dennison Corp.*
308 F.3d 1075 (9th Cir. 2002) ................................................. 35

iv

*Glock v. Glock*
    797 F.3d 1002 (11th Cir. 2015) ................................. 25, 27, 28, 32, 40

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*
    No. 19-MC-80215-WHO(TSH)
    2020 WL 820327 (N.D. Cal. Feb. 19, 2020) .................................. 36

*In re Ambercroft Trading Ltd.*
    2018 WL 4773187 (N.D. Cal. Oct. 3, 2018) .................................. 21

*In re Application of Joint Stock Co. Raiffeinsenbank*
    No. 16-mc-80203-MEJ
    2016 WL 6474224 (N.D. Cal. Nov. 2, 2016) .................................. 34

*In re Application of Malev Hungarian Airlines*
    964 F.2d 97 (2d Cir. 1992) .................................. 36

*In re Nouvel, LLC*
    2022 WL 3012521 (C.D. Cal. July 22, 2002) .................................. 13

*In re Premises Located at 840140th Ave. NE, Bellevue*
    634 F.3d 557 (9th Cir. 2011) .................................. 35

*In re Technik*
    No. C11–1386-JCC
    2011 U.S. Dist. LEXIS 162826 (W.D. Wash. Oct. 6, 2011) .................................. 36

*In re Vahabzadeh*
    No. 20-MC-80116-DMR
    2020 WL 5095131 (N.D. Cal. Aug. 28, 2020) .................................. 13

*Intel Corp. v. Advanced Micro Devices, Inc.*
    542 U.S. 241 (2004) .................................. 11, 35

*John Deere, Ltd. v. Sperry Corp.*
    754 F.2d 132 (3d Cir. 1985) .................................. 36

*Jones v. Aero/Chem Corp.*
    921 F.2d 875 (9th Cir. 1990) .................................. 25, 31

*Khrapunov v. Prosyankin*
    931 F.3d 922 (9th Cir. 2019) .................................. 34, 40, 41

*Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*
    787 F.3d 1237 (9th Cir. 2015) .................................. 24

*Lowry v. Barnhart*
    329 F.3d 1019 (9th Cir. 2003) .................................. 24

*Lufthansa Technik v. Panasonic Avionics Corp.*
No. C17–1453-JCC
2017 WL 6311356 (W.D. Wash. Dec. 11, 2017) ................................ 13, 14, 36

*Lujan v. Defs. of Wildlife*
504 U.S. 555 (1992) ................................................................. 4, 19

*Matter of Lufthansa Technick AG*
No. C17–1453-JCC
2019 WL 280000 (W.D. Wash. Jan. 22, 2019) ............................... 14

*Matter of Lufthansa Technick AG*
No. C17–1453-JCC
2019 WL 331839 (W.D. Wash. Jan. 25, 2019) ............................... 13

*Nicholson v. Bd. of Educ. Torrance Unified Sch. Dist.*
682 F.2d 858 (9th Cir. 1982) ................................................ 26

*Schoenberg v. Fed. Bureau of Investigation*
2 F.4th 1270 (9th Cir. 2021) ................................................ 23

*Town of Chester v. Laroe Ests., Inc.*
581 U.S. 433 (2017) ........................................................... 21

*W. Watersheds Project v. Kraayenbrink*
620 F.3d 1187 (9th Cir. 2010) ............................................. 19, 21

*Wasco Prods. v. Southwall Techs., Inc.*
166 F. App'x 910 (9th Cir. 2006) ......................................... 22

**Statutes:**

28 U.S.C. § 1331 ................................................................. 1

28 U.S.C. § 1782
..... 1, 2, 4, 6, 9, 10, 13, 16, 18, 20, 21, 22, 23, 26, 27, 28, 32, 34, 35, 36, 40, 41

**Court Rules:**

Fed. R. Civ. P. 24 ............................................................... 21

**Other:**

S. Rep. No. 88–1580 .......................................................... 36

Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2859 (3d ed.) ........... 31

## JURISDICTIONAL STATEMENT

The district court below has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1782. Appellee agrees with Appellant that the district court order it appeals is a final, appealable order, but this Court lacks jurisdiction pursuant to Article III of the U.S. Constitution because Appellant lacks standing to appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee, Novalpina Capital Partners I GP S.À.R.L., does not believe that oral argument will assist this Court in determining the issues raised by Appellant in its motion for stay pending appeal. The ruling of the district court below that is the subject of this appeal was rendered without hearing, as was this Court's denial of a stay pending appeal.

## INTRODUCTION

Treo NOAL GP S.À.R.L and Treo Asset Management LLC's (collectively "Treo" or "Intervenors") Opening Brief (the "Brief") is devoid of any facts or law warranting reversal of the district court's order granting Novalpina Capital Partners I GP S.À.R.L.'s ("Novalpina" or "Petitioner") motion to compel production of additional documents from Respondents Michael Langdon or Tobias Read ("Respondents") and denying Treo's motion for reconsideration of the grant of Novalpina GP's § 1782 petition, or, in the alternative, to amend the protective order.

The following facts are undisputed: Respondents asked Novalpina to agree to a protective order because Treo requested one. Novalpina did. Respondents then moved for entry of the order. Treo did not oppose this motion in the three weeks the proposed order was on the docket awaiting approval. That proposed protective order expressly allowed Novalpina and certain additional persons and entities to use documents in proceedings other than those identified in its §1782 Petition. The district court entered the order, and Petitioner acted in accordance therewith. Neither Treo nor Respondents disputed the meaning of the language of the protective order. Treo and Respondents nevertheless moved the district court to modify the protective order or rescind the grant of the § 1782 Petition, and the district court refused. It found that "remorse . . . is not good cause" to modify an agreed protective order, that its original order granting the § 1782 Petition did not limit the use of the documents to any particular proceedings, and neither Respondents nor Treo even asked the court to impose any such limitation. Respondents did not appeal and promptly concluded their production of documents in August, after the district court and this

Court denied Treo's motions to stay pending appeal. Treo filed this appeal alone, without respondents, but at no point has it made any showing of harm, nor even that its own confidential documents were at issue in Respondents' document production.

These bare facts are dispositive of this appeal. There is no precedent whatsoever warranting reversal of a district court's decision in such circumstances. The district court did not abuse its discretion when it declined to retroactively impose limitations on a protective order whose plain language disclaimed any. Treo does not even attempt to argue that the order implicitly contained such limitation. It is hardly controversial to require litigants to abide by the terms of the agreements they make. There is certainly no precedent for reversing relief granted to a party for abiding by the express terms of an agreement.

Ruling in Treo's favor would create a pernicious precedent. It would mean that a district court may abuse its discretion any time it enforces its own orders as they are written, including orders reflecting the agreement of litigants themselves—of which all parties had notice and an opportunity to oppose prior to entry—if a party later regrets its consent. To be clear, this is no allegation—let alone any evidence—of anything resembling fraud in the inducement, mutual mistake, or any other cognizable defense to an agreement. Setting such a precedent would be a jurisprudential disaster, inverting a foundational principle of our legal system that contracts and orders mean what they say and parties can and should rely on them.

The Court need not even reach the merits because Treo lacks standing to appeal. To invoke this Court's jurisdiction based on an injury related to the judgment, Treo needed to establish that the denial of its motion caused it a concrete

and particularized injury that is actual or imminent and is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). It has not done so. While Treo alluded to "independent harms" (Br. at 30), it never articulated any. A "risk of disclosure of Treo's confidential information" was a reason cited by Treo for the protective order (Br. at 48), but there is no showing on the record that any of *Treo's* confidential information was ever disclosed, or, if it was tha any harm flowed from such disclosure. And not for lack of opportunity: Respondents began producing documents well over a year ago.

## ISSUES PRESENTED

Did the district court abuse its discretion in declining to amend a stipulated and unopposed protective order between the parties and/or to reconsider the grant of the § 1782 Petition as requested by Intervenors because Petitioner used documents in compliance with the stipulated and unopposed protective order?

## RELEVANT FACTUAL BACKGROUND

### I.    The Underlying Breach of Contract and Fraud and Related Litigation

The litigation underlying the § 1782 Petition arises out of fraudulent acts undertaken by Treo NOAL GP, a wholly-owned subsidiary of Treo Asset Management, and the Limited Partner Advisory Committee ("LPAC") of a Luxembourgish private equity fund now called NOAL SCSp, formerly Novalpina SCSp (the "Fund"). Novalpina is the original general partner of the Fund, and it and related entities are owed payment of substantial contractual entitlements, called the Removal Entitlement and Sponsor Commitment. *See* II-ER-247. These payments

are worth hundreds of millions of dollars and were due to be paid after Novalpina was removed on July 9, 2021pursuant to a no fault divorce clause in the Fund governing agreements. This removal was precipitated by a dispute between the three founders of the Fund, Stefan Kowski, Bastian Lueken, and Stephen Peel. II-ER-247–48.

Novalpina has sued and will sue Treo and the LPAC again because Novalpina wants the money owed to it by contractual right. Treo and the LPAC breached the Fund's limited partnership agreement to install Treo as new general partner of the fund without appointing an independent valuer to value the fund and determine the Removal Entitlement and Sponsor Commitment and without paying the Sponsor Commitment to Novalpina (which constitute conditions precedent to the appointment of any new general partner). II-ER-247–48. After the takeover, Treo and the LPAC induced Novalpina and related persons agree to valuation principles for the payments and promised to appoint an independent valuer to calculate the payments. II-ER-247–51. In exchange, Novalpina and related persons would (and did) facilitate a smooth transition in leadership despite overt breaches of the Limited Partner Agreement by Treo and the LPAC.

As set forth in the opening Petition, this inducement was fraudulent. In Novalpina view, Treo and the LPAC realized how much they would have to pay for the Removal Entitlement and Sponsor Commitment and set about a course of action to ensure that they would never have to pay it. Shortly after Treo took over the Fund, there was overt resistance to appointing an independent valuer or applying the valuation principles as agreed. In November 2021, NOAL GP wrote that the

LPAC was "unwilling to agree to appoint any valuer because it believed that a valuation on the basis of the agreed principles would be "infeasible (and was always unworkable)." IV-ER-569–70. This was strange at the time, but in the months that followed, further evidence that neither Treo nor the LPAC had ever intended to make good on the contract emerged. As one example, Novalpina learned that the Fund chose to sell a valuable portfolio company—LXO—for €20 million less than what it was worth to a friend of Langdon, reducing the amount of liquidity that would be available to pay Novalpina. IV-ER-669. This appeared to be corruption; Novalpina believed it was part of Treo and the LPAC's scheme to defraud Novalpina of its contractual entitlements.

Discovery obtained in the § 1782 proceedings below has confirmed the fraud. The documents show Treo and the LPAC never intended to make the payments according to the agreed valuation principles or to appoint an independent valuer. II-ER-247–51. As established by the document production, Langdon had long planned to avoid paying the Removal Entitlement and Sponsor Commitments. On July 2, 2021, before Novalpina GP was even removed as the general partner, he sent an agenda to Treo and the other LPAC members, listing such items as:

> Removed GP:
> - Discuss GP's right to put the GP commitment. Presumably the fund would have to finance this, but can we resist in any way?
> - What help if any can your firm offer guiding the valuation process that will crystallize the removed GP's carry entitlement? Given where the debt on these companies is trading, we might like to push back on the marks.
> - Should the fund audit/investigate the removed GP for breaches of fiduciary duty?
> Were any to be found, what recovery (if any) of removal entitlements could be pursued by the partnership?

II-ER-212. They proceeded to form a "post-transition [to the new GP] takedown plan" based on litigation against Novalpina and its indirect shareholders. II-ER-251. To ensure Treo would execute the plan, Langdon structured Treo's commission to

> correspond to the final net amount of the distribution sent to us, so the 2.5% will apply after the carried interest entitlement linked to the revocation of the previous General Partner.
> Clearly, this is another incentive for [Treo] to try and manage this evaluation exercise with care.

II-ER-225. Although the limited partners did not formally vote to engage Treo until August 6, 2021, the foregoing email was circulated on July 10, 2021, one day after the vote to remove Novalpina occurred. II-ER-224.

Langdon and Treo systematically undermined any evidence that would require a substantial payment to Novalpina, even when it was provided by neutral parties. They rejected a pre-removal valuation by Ernst & Young, with Langdon saying "I don't know what we would need to document why we aren't accepting this valuation, but whatever is required I will do." II-ER-219. Jeffrey Dunn of Treo took all of six minutes reviewing the valuation before responding to Langdon and state "[t]hat takes E&Y out of contention for being the independent appraiser." II-ER-214.

As for the agreed valuation principles, Treo set out a plan not to allow the valuation unless Novalpina would agree to material "concessions" on their valuation agreement. This was to include agreement to value the portfolio companies not

at the time of Novalpina's removal, as required by the LPA, but when they were first acquired by the Fund, which would essentially remove the value added by Novalpina during the investment period. II-ER-233.

The discovery also showed that Treo knowingly filed sham lawsuits. In Amended Particulars of Claim filed on behalf of Treo and others on October 5, 2023—nearly 10 months after Novalpina GP filed its Petition—Treo alleged that but for a success fee paid by Mr. Kowski, a Fund founder, it would not have held LXO for another two years. II-ER-189–192. This was false. Mr. Langdon himself was involved with Mr. O'Connor (who is a director or representative of Treo) in arranging for a sale of LXO to Simon Cottle of Stanley Capital Partners as early as October 2021; a November 2, 2021 email to Langdon asks for five minutes to "update" him on developments, which included an email in the thread in which Mr. Cottle directly communicated with LXO about a sale. *Id.* The email also assured Langdon that "Simon has been coordinating with Finbarr O'Connor at BRG per our conversation a few weeks back." II-ER-185–86, II-ER-190–91.

Appellant characterizes Novalpina's pursuit of the payments it is owed—one lawsuit for breach of contract and proceedings to enjoin Fund distributions until it is paid—as "scorched-earth litigation." Br. 3. Novalpina disputes this characterization and engages with it only to note that, since Novalpina filed suit, Treo's litigation against Novalpina and relatedly entities proliferated mitotically. As of April 2024, Treo has subjected Mr. Stefan Kowski, an indirect shareholder of Novalpina, to 10

regulatory complaints and six lawsuits; against Novalpina entities, Treo initiated seven lawsuits and complaints. II-ER-185–88; II-ER-167–69. Additional suits have been filed since but are not included in the record.

One of Treo's lawsuits against Novalpina arose out of Novalpina's decision to amend the Master Luxco articles of association to comply with credit facilities in which the Fund had invested which required continuity of control. I-ER-567 ¶ 34. As the discovery has established, the consequences of the removal of Novalpina for the credit facilities was of serious concern to the LPAC, too, a fact reflected in their notes from that time period. II-ER-211. There was nothing fraudulent about the amendment; nothing at all was concealed. As set forth in the lawsuit filed by Treo itself, this amendment was reflected on the face of the articles and ratified two separate times by Treo, which admits that it was fully aware of the amendment prior to ratifying it. IV-ER-607 ¶ 46, 51. In neither the lawsuit, nor the briefing in the proceedings below does Treo ever identify a single abusive measure taken by Novalpina GP on account of the amendment. They complain only that Novalpina GP sought to invalidate the actions of its own directors whom a Luxembourgish court ruled had no authority to take actions on behalf of Novalpina GP. IV-ER-570 ¶ 45.

## II.    The § 1782 Petition in the District Court

On January 27, 2023, Novalpina filed its § 1782 Petition to obtain documents for use in defense against the Master Luxco-related lawsuit Treo filed in the district court of Luxembourg as well as a contemplated fraud lawsuit to be filed against

Treo and members of the LPAC, which would include the Oregon Public Employees Retirement Fund ("OPERF"), a limited partner in the fund, and Michael Langdon, the Director of Private Investments and Chair of the LPAC.[1] All of the documents requested bore directly on the two lawsuits described in the Petition, including evidence that would show that the valuation principles were not "unworkable", but instead, that the LPAC and Treo knew that the Fund and its portfolio companies—including NSO—were worth significant amounts of money at the time of Novalpina's no-fault removal, deliberately misrepresented their intentions around paying the Removal Entitlement and Sponsor Commitment, and created incentives to wrongly deprive Novalpina of these payments. Novalpina further sought evidence to prove that the amendment to the Master Luxco articles of association was not only known but was in fact relied upon in Treo's dealings concerning lenders in order to avoid the change in control provisions of the underlying credit agreements. IV-ER-666–67.

At the same time, Petitioner filed a § 1782 Petition seeking discovery from Treo Asset Management LLC in the Southern District of New York on the same basis. That Petition was granted, after which Treo moved to quash. That motion has been fully briefed and pending since August 2023. II-ER-42–43. Treo makes much

---

[1] Treo cites to the LPA for the proposition that all disputes arising therefrom shall be brought in Luxembourgish courts. Novalpina filed a petition for discovery that did not seek to impose liability of any kind. As the district court ruled on August 10, 2023, the Petition is not a lawsuit precluded by the LPA's forum selection clause. II-ER-298. In fact, Novalpina's lawsuits have been filed in Luxembourg; Treo's have not. II-ER-300 (attesting to complaints by Treo against Novalpina and related entities and persons in the UK five times, and in the Cayman Islands, and France); II-ER-187 (describing UK lawsuits initiated by Treo).

out of the fact that Petitioner has not filed the fraud claim against Treo, but neglects to mention that the evidence required to bring that claim is the subject of a still-pending motion Treo itself filed to prevent disclosure.

In Oregon, Treo opposed the Petition against Respondents on the basis that Novalpina and Respondents were both parties to a pending lawsuit in Luxembourg, and thus the first *Intel* discretionary factor—which asks whether the discovery sought is obtainable in the foreign tribunal—should weigh against granting the Petition. III-ER-451–71; *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004) ("*Intel*").[2] Treo did not express concern about the use of confidential documents in any foreign proceeding, or the use of documents against Treo.

Novalpina had no plans to use the documents other than in the manner then-outlined in the Petition. There is no evidence to the contrary. Treo cites a May 2, 2023, telephonic hearing on Treo's Motion to Intervene in which the district court asked Novalpina "am I understanding correctly . . . that Mr. Langdon, at least, and possibly Mr. Read, are already involved in the Luxembourg litigation?" III-ER-505. Petitioner responded that Langdon was "not in the Luxembourg litigation that we're seeking evidence for," and proceeded to describe the Luxembourg litigation, including the breach of contract litigation to which Langdon was a party, as well as the two proceedings that the Petition was based on. Petitioner also acknowledged

---

[2]  Treo also averred that Novalpina already had made a discovery request in Luxembourg, but this is not right. *See* Declaration of Nicolas Thieltgen, DOC. 16, ¶¶ 4–5, Ex. 1. Novalpina asked the court to grant discovery on fund assets *if* it wins the case and only then if there is not enough money in the fund to pay the judgment. *Id.* That case is ongoing.

that Langdon "would be a named party" in Novalpina's fraud lawsuit. III-ER-505. Because the court was seeking to understand the landscape of the litigation, Petitioner explained the claims and defenses. Afterwards, it informed the court that: "Now, there is other litigation pending, but that's about breach of contract. That's about attaching assets in aid of execution on any eventual judgment. It's really not at issue here." III-ER-506.

Novalpina's intended uses of the documents were laid out in a Declaration by Nicolas Thieltgen (IV-ER-561) who represents Novalpina in Luxembourg in the lawsuit filed by Treo and in related proceedings; these were described in the declaration along with the prospective fraud claim. IV-ER-570–71. These are the cases for which Luxembourg counsel required documents. The briefing also described the breach of contract litigation as a "straightforward contract dispute and seeks to remedy the breaches of the LPA," based on the Declaration, the expectation being that the case would be decided on the terms of the contract. IV-ER-687. Representations that Langdon was not a party to the proceedings for which discovery was being sought are statements of fact; Treo does not claim otherwise.

Novalpina did not disclaim any possible future use of the documents (assuming the court's order and any protective order did not prohibit it). Both Treo and Novalpina mentioned a variety of other proceedings pending in Luxembourg and other countries. Novalpina was candid about the possibility that the documents could be useful in other proceedings. For example, Novalpina informed the court that "in the time since the Petition was filed, Treo has filed two new lawsuits

against Novalpina in Luxembourg in which the discovery sought is directly relevant. Should the Court deny relief now, Petitioner respectfully requests leave to amend the Petition to include the new lawsuits." II-ER-306.

Novalpina also made clear that under *Intel*, discovery can be obtained from parties to foreign parties and used against them. In its Petition, it argued that the appropriate metric for the first *Intel* factor was not whether the target of the subpoena was a party to the foreign proceeding, but whether the materials were "obtainable" via a mechanism in the foreign court. In support of this argument, Petitioner cited several cases where court granted § 1782 petitions seeking discovery directly from a party to the foreign litigation, including: *Matter of Lufthansa Technick AG*, No. C17–1453-JCC, 2019 WL 331839, at *2 (W.D. Wash. Jan. 25, 2019) (first factor weighed in petitioner's favor where intervenor was party to German, French, and UK proceedings, which lacked effective discovery mechanisms); *Lufthansa Technik v. Panasonic Avionics Corp.*, No. C17–1453-JCC, 2017 WL 6311356, at *2 (W.D. Wash. Dec. 11, 2017); *In re Nouvel, LLC*, 2022 WL 3012521, at *4 (C.D. Cal. July 22, 2002) (concluding discovery could be had against participant in foreign proceeding because [s]ufficient doubt pervades the issue of the alleged availability of the subject discovery directly from the Luxembourg court that this factor should weigh in favor of facilitating the discovery here."); *In re Vahabzadeh*, No. 20-MC-80116-DMR, 2020 WL 5095131, at *3 (N.D. Cal. Aug. 28, 2020) ("Mostafa is a party to the French proceedings. However, according to Petitioner's counsel, the documents Petitioner seeks to obtain from Mostafa in California are outside the reach of the French court's jurisdiction…. Thus, the

13

first factor weighs in Petitioner's favor."); *Matter of Lufthansa Technick AG*, No. C17–1453-JCC, 2019 WL 280000, at \*2 (W.D. Wash. Jan. 22, 2019) (discovery beyond French court's reach weighed in favor of granting petition against respondent who was party to French proceeding).

The district court agreed. It acknowledged that Respondents and Novalpina were already parties to a proceeding pending in the Luxembourg district court and that Mr. Langdon would be a defendant in contemplated fraud litigation. III-ER-505–10. Citing authority that the first *Intel* factor's central focus is whether the discovery is "obtainable" in the foreign proceeding, not whether the party is subject to the foreign court's jurisdiction, the district court found that Respondents "have not shown that the information could be obtained" in any proceeding in Luxembourg, including those to which they and Novalpina were already parties. II-ER-296. In so ruling, the district court cited Petitioner's authority, *Lufthansa Technik v. Panasonic Avionics Corp.*, 2017 WL 6311356, at \*2, which held that "the first Intel factor weighed in favor of granting the petition where, although the subject of discovery was a party to a pending proceeding, the foreign court's jurisdictional limits effectively rendered the party out of reach of the petitioners." II-ER-296. Thus, the district court found that the first *Intel* factor weighed in Novalpina's favor. II-ER-296–98 (weighing all four factors in favor of relief).

Neither Treo nor Respondents appealed the district court's order.

14

### III.    The Agreed Protective Order

Respondents made productions on December 8 and 13, 2023, and further productions on January 26, 2024, and February 17, 2024. Decl. of Tara J. Plochocki, DOC. 11, at 2–3, Exs. 1–2, 4–5. In between, on December 27, 2023, Respondents sent a draft protective order to Novalpina. DOC. 11, Ex. 3. Novalpina suggested modifications, including confirmation that confidential documents could be used by:

> The Parties, and every employee, director, officer, manager, direct or indirect shareholder, associate or affiliate, representative, agent of any party to this action (each an "Interested Party"), as well as attorneys of the Parties and Interested Parties in litigation relating to the events described in the Petition . . . for the purposes of litigation relating to the events described in the Petition.

II-ER-263–64, ¶¶ 4.1(b), 4.2. Respondents agreed and filed the stipulated Protective Order on January 24, 2024. II-ER-283–91. Treo did not seek any modifications in the three weeks before the district court granted the motion and entered the Protective Order. II-ER-258–67 (entered on Feb. 13, 2024).

After entry of the Protective Order, Novalpina and two Interested Parties used several of the produced documents in accordance with that order. *See* II-ER-245–46. Treo and Respondents claimed that such use was improper, the Protective Order notwithstanding, and objected to completing the production. Novalpina moved to compel. II-ER-243–57. Treo and Respondents simultaneously moved for reconsideration of the § 1782 Order, asking the district court to vacate it completely

or, in the alternative, to amend the Protective Order to limit the use of all documents to two proceedings. II-ER-139–55. The Court denied Respondents' and Treo's motions their entirety, as discussed below.

## IV.   Treo's Effort to Overcome Waiver of Objections to the Protective Order

Treo's motion for reconsideration or to modify the protective order claimed that Novalpina had intended to use confidential documents obtained from Respondents in multiple other proceedings all along, including those which Treo *had not even filed* when Novalpina filed its § 1782 Petition, and against specific assertions Treo had not yet made. (Br. 24–25). The instances are as follows.

First, on March 17, 2023, Treo opposed the appointment of a neutral judicial valuer in the breach of contract litigation to which Langdon is a party. Treo also contended that if the Luxembourg court nevertheless decided to appoint a judicial valuer, then it should not permit that valuer to see a 2021 valuation performed by Ernst & Young, one of the "big 4" accounting firms because it is not independent. II-ER-169–70 ¶ 10.b. On February 22, 2024, Novalpina's counsel introduced two emails contained in the document production which showed that both the LPAC and Treo, in fact, believed Ernst & Young was reliable and independent, and continued to so believe even after reviewing the 2021 evaluation. *See* II-ER-233 (Treo stating "we believe it is unlikely that a big-four valuation practice would conduct this [valuation] work other than independently").

Second, on March 9, 2023, Treo and the Fund filed a lawsuit against Novalpina FP I SCSp, the Carried Interest Partner, which is entitled to the Removal

Entitlement and part of the Sponsor Commitment. II-ER-302–03 ¶ 8. It is managed by Novalpina Group GP; Michael Zini and Stefano Pileri are directors of both Novalpina Group GP and Petitioner Novalpina GP. Per the Petition, the Carried Interest Partner initiated suit in Luxembourg to enjoin distributions from the Fund until it was paid. Treo's March 9 retaliatory suit claimed that the injunctive suit was abusive. On March 26, 2024, the Carried Interest Partner included eight documents in a non-public filing which showed that Treo and the LPAC had never intended to pay the Removal Entitlement or Sponsor Commitment on the agreed terms and thus the injunction was necessary. II-ER100 ¶ 8; II-ER-169–70 ¶ 10.b.

Third, as noted above, on February 7 and October 5, 2023, Treo made sworn statements in one of its UK lawsuits against Stefan Kowski and Bastian Lueken. II-ER-186 ¶ 4. Treo declared that because of a success fee had been paid by a subsidiary of the Fund in connection with the Fund's acquisition of LXO, Treo began considering a sale of LXO on May 13, 2022 and otherwise would have kept LXO for at least another two years and made more profits for the Fund – allegedly lost profits Treo were now claiming from Mr. Kowski and Mr. Lueken. *Id.* These sworn statements by Treo are false and Langdon's documents showed it. Upon learning of this, Mr. Kowski's counsel said so in a February 20, 2024 letter sent to Treo and its counsel along with five documents. II-ER-186–87 ¶ 6; II-ER-102 ¶ 5.

Each of these uses occurred after Novalpina obtained the express consent of the producing parties in the Protective Order entered on February 13, 2024. While some of these documents had been produced just after the entry of the Protective Order, others had been produced months before in the productions listed.

17

The District Court denied Respondents' and Treo's motions in their entirety. I-ER-1–11.

## SUMMARY OF THE ARGUMENT

Treo lacks Article III standing to pursue this appeal because it has not established a concrete injury; the Court must dismiss the appeal on this ground alone. The appeal also fails on the merits. The challenged order properly considered all of Treo's arguments and found them to be without merit. The district court applied the correct legal standard and made a decision well within its discretion and which it discussed at length in the body of its ruling. In this appeal, Treo seeks a ruling that ignores the plain language of the district court's order granting the § 1782 Petition, the protective order to which Treo did not object, and the district court's reasoning in denying Treo's motion to modify the protective order or reverse its original grant of the Petition. Treo further requests this Court to rule contrary to existing precedent on § 1782 petitions, motions for reconsideration, and protective orders. The Court should reject Treo's invitation to create jurisprudential chaos and affirm the District Court's order.

## ARGUMENT

## I.    TREO LACKS STANDING TO APPEAL

As a threshold matter, Treo lacks standing to appeal. To invoke an appellate court's "jurisdiction on the basis of an injury related to the judgment, Intervenors must establish that the district court's judgment causes their members a concrete and particularized injury that is actual or imminent and is likely to be redressed by a

favorable decision." *W. Watersheds Project v. Kraayenbrink*, 620 F.3d 1187, 1196 (9th Cir. 2010) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. at 560). Treo has no injury and so it has no standing and its appeal must be dismissed.

### A. Treo Has No Concrete Injury

Treo's only allusion to harm is the district court's alleged failure to consider "the independent harms caused to Treo" and the "risk of harm." Br. 30, 47; Intervenors' Rule 8 Mot. For Stay Pending Appeal, DOC. 9, at 15. But Treo never raised any unique "interests or potential harms" in its briefing before the district court, and it does not cite any now. II-ER-139–155. Treo only argued that there were implied limitations on the documents' use based on the original district court order and claimed that Treo *may* have confidential information in the documents, even though Respondents had produced thousands of documents in advance of the entry of the protective order. DOC. 9, at 13–14. Never has Treo shown that there was, *in fact*, any of its own confidential information in the documents produced or that harm arose from the use of any of its own confidential information. Notably, Treo has no argument at all about the use of Respondents' non-confidential documents that reveal Treo to be dishonest; indeed, many of them are on the public docket in the district court. *See generally*, II-ER-185–242.

That the documents used by Petitioner and/or others so authorized under the Protective Order make Treo look very bad in litigation is not cognizable harm. Indeed, the District Court leaned toward denying Treo's motion to intervene for lack of standing on the grounds that "I understand why they might not want petitioner

to be able to get this discovery; but, obviously -- but that didn't seem, to me, a very persuasive argument." III-ER-512. The district court then noted that if it so ruled, it would give Treo "leave to renew in the future *if the facts support it*." *Id.* (emphasis added).

The facts decidedly do not support Treo's standing to appeal here. The bulk of its appeal is to seek purported redress for alleged "harm" that is not its own. It contends that the motion to reconsider the grant of the § 1782 had merit because two emails were used against Langdon in the Luxembourg breach of contract litigation, and that the first *Intel* factor requires consideration of whether the party from whom discovery is sought is a party to the foreign proceeding. To the extent the use of the two emails matters at all, it is for Respondents to address. But Respondents chose not to appeal the District Court's decision. The use of the documents which Treo complains of—use in litigation against Treo in which Langdon is not a party—has nothing to do with the *Intel* factors. The first *Intel* factor has nothing to say about the use of documents from a producing party against third parties in litigation.

## B. That Treo Was Permitted to Intervene Does Not Give It Standing to Appeal

Treo is incorrect that the district court has implicitly ruled that the Treo had Article III standing to make its motion to modify because it granted its motion to intervene. *See generally* III-ER-496–531. Treo further claims that, by some transitive property of implied standing, Treo now has standing to appeal. This is incorrect as a matter of fact and law. The court granted Treo's Motion to Intervene without determining standing. *See* III-ER-527:3–6 ("I'll give the defendants a

chance - so I will grant the motions to intervene. I will give defendants an opportunity to respond to the petition"). The basis for Treo's intervention was that the documents to be produced might ultimately "pertain" to them and Treo could provide "context." III-ER-556–57. Federal Rule of Civil Procedure 24(a) and (b) only requires a determination of standing when an intervenor seeks additional relief beyond that which an original party requests. Thus, the district court's giving Treo permission to intervene says nothing about standing.

Respondents—the only ones obligated to do anything in response to the district court's order—joined Treo's motion and did not appeal. As appellant, Treo now seeks relief beyond that of the Respondents and it must establish its own standing. *See Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) ("For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right."). An intervenor's standing to appeal is not based on their position at the outset of the suit, "but rather may be contingent on whether they have standing now based on a concrete injury related to the judgment." *Kraayenbrink*, 620 F.3d at 1196. Treo has not shown that it has been injured by the judgment denying its motion for reconsideration or to modify the protective order. Treo cites to *In re Ambercroft Trading Ltd.*, 2018 WL 4773187, at *4 (N.D. Cal. Oct. 3, 2018) for the proposition that a party against whom requested information will be used has standing to challenge "the issuance of § 1782 subpoenas." Br. 1. This may have given Treo standing to appeal the district court's *original* grant of the § 1782 order, which it did not do, but it does not give Treo standing to appeal now.

Irrespective of Treo's status in the proceedings below, standing decisions are reviewed de novo; "federal courts are required to examine sua sponte jurisdictional issues such as standing." *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999); *Wasco Prods. v. Southwall Techs., Inc.*, 166 F. App'x 910, 911 (9th Cir. 2006) (standing may be raised for the first time on appeal). To have standing to appeal, Treo thus must have "independent jurisdictional grounds on which to pursue an appeal, absent an appeal on whose side the intervenor intervened." *Beck v. U.S. Dep't of Com.*, 982 F.2d 1332, 1338 (9th Cir. 1992).

## C. Treo's Appeal Is a Belated Attempt to Appeal the District Court's Original Order Granting the § 1782

Treo's complaint about the use of documents under the terms of the protective order is exactly the same as its original objection to the § 1782: that Respondents' documents are going to be used against it and it does not like that. But this is not a concrete or particularized injury linked to the denial of the motion for reconsideration or to amend the protective order. The district court makes clear in its order denying Treo's motion that, to the extent they are aggrieved, it is their own fault because neither Treo nor Respondents asked for any kind of limitation on the use of documents, there is none on its face, and so there is not one. Treo's problem is not with the protective order, it's with the original order. But the time to appeal that judgment has long since passed.

Given that it has no cognizable injury, Treo has to recycle arguments made in its original opposition to the § 1782 Petition—that the forum selection clause should matter for discovery, that Luxembourg has a less favorable discovery regime,

that § 1782 discovery results in an imbalance between the foreign parties, that the discovery sought is not relevant to the foreign litigation. Br. at 16, 32, 38; III-ER-457, 462–68. None of this has anything to do with the District Court's Order of July 30, 2024. Each of these issues was briefed and decided well over a year ago. II-ER-292–300.

Without any injury linked to the district court's order, and because Respondents have not appealed, Treo lacks standing and its appeal must be dismissed.

## II.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION

The parties agree that the district court's ruling on the motion for reconsideration or to amend the protective order will be reviewed for abuse of discretion. When reviewing for abuse of discretion, "[t]he judgment below must be affirmed unless (1) [the Court has] a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors, (2) the district court applied the wrong law, or (3) the district court rested its decision on clearly erroneous findings of fact." *Delay v. Gordon*, 475 F.3d 1039, 1043 (9th Cir. 2007); *Schoenberg v. Fed. Bureau of Investigation*, 2 F.4th 1270, 1275 (9th Cir. 2021) (an appellate court will not reverse unless the result was "illogical, implausible, or without support in inferences that may be drawn from the record.").[3]

---

[3]    In its brief, Treo makes (irrelevant) factual allegations that are neither in the record nor were presented in the district court below. Br. 5, n. 3 (blaming Petitioner, without citation, for Treo's difficulties in obtaining documents from nonparty Weil

**A.**     **The District Court's Denial of Treo's Motion for Reconsideration Was Within Its Discretion**

Treo makes three interrelated arguments why the district court abused its discretion in denying Treo's motion for reconsideration: (i) the district court applied the wrong legal standard, (ii) the district court "summarily" denied its motion without considering its "new" evidence, and (iii) the district court made findings without basis in the record. All three fail.

**1.**     **The District Court Articulated and Applied the Correct Legal Standard for a Motion for Reconsideration**

On its face, the district court articulated and applied the correct standard of review in its decision:

> [A] motion for reconsideration based on new evidence, while generally disfavored, may be granted if the moving party can show the new evidence (1) existed at the time of the original decision; (2) could not have been discovered through due diligence; and (3) was of such magnitude that it likely would have changed the disposition of the case. *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990) (per curiam). A motion

---

Gotshal); Br. at 12–15 (citing to a "da Silva Declaration" filed in the Southern District of New York, but never in this case); Br. at 15, n. 6 & n. 7 (discussing further factual allegations without any citation). This is blatantly improper, as it is neither in the record, judicially noticeable, nor subject to a motion to supplement the record for any extraordinary circumstances or even an attempt to explain why this Court should consider such evidence. "It is rarely appropriate for an appellate court to take judicial notice of facts that were not before the district court." *Kohn L. Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1241 (9th Cir. 2015) (denying motions to supplement the record with facts presented in other factually related court proceedings that could have been presented to the trial court) (citing *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 392 n. 7 (9th Cir. 2000)). "This limitation is fundamental." *Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003). Without conceding any allegations, Petitioner will not address factual allegations of no use to this Court.

> for reconsideration is an ***extraordinary remedy*** that "should not be granted, absent highly unusual circumstances." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (quoting *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

I-ER-7 (emphasis added). The court referred to this standard when it held that "Intervenors' Motion for Reconsideration, ECF 48 [II-ER-139–55], is DENIED because, on this record, Intervenors have not shown that Petitioner's actions warrant that ***extraordinary remedy***." I-ER-3 (emphasis added). This is exactly the standard that Treo complains the Court failed to apply. Br. 33 (citing *Jones v. Aero/Chem Corp.,* 921 F.2d 875, 878 (9th Cir. 1990) ("Jones"). Intervenors mischaracterize the district court's order as improperly relying on *Glock v. Glock*, 797 F.3d 1002 (11th Cir. 2015) for the standard of review. It did not. What the district court actually said was that it "does not find that Intervenors and Respondents have provided evidence of Petitioner's 'chicanery,'" (I-ER-11), which Treo had argued would have changed the disposition of the case. Accordingly, the district court determined that Treo did not "justify such extraordinary relief." I-ER-11.

Treo further complains that the district court rejected its motion in only a single sentence. This is not correct either. The district court had already explained that "in granting the § 1782 Petition, this Court's Order did not limit the use of materials to the two proceedings identified by Petitioner, and neither Respondents nor Intervenors requested such a limitation in their oppositions" and thus the documents did not have any limitations on use. I-ER-9. Given this fact, it is obvious that the use of the documents did not constitute chicanery. The court was not required to expressly address each of the factors in its findings because its recitation

of facts easily supported its conclusion. *See Nicholson v. Bd. of Educ. Torrance Unified Sch. Dist.*, 682 F.2d 858, 866 (9th Cir. 1982) ("The test in this circuit as to the adequacy of findings of fact is whether they are explicit enough on the ultimate issues to give the appellate court a clear understanding of the basis of the decision and to enable it to determine the grounds on which the trial court reached its decision"). Because Respondents made precisely the same arguments as Treo, the district court was justified in disposing of both parties' motions on the same findings. *Cf.* II-ER-75–89 (Respondents' motion).

### 2. The District Court Expressly Considered Treo's Purported New "Evidence"

Treo argues that the district court erred in dismissing its evidence of Novalpina's "chicanery". *See* Br. 37 (asserting that the Order "made *no finding*" of the factors under Rule 60). Treo claims it presented new evidence in its motion for reconsideration and the district court failed to consider it. Br. 34–35. The district court did in fact consider it; it just disagreed. The court recounted the circumstances surrounding the issuance of the Protective Order, the language of that jointly proposed order, and Treo's charges of misuse of documents. I-ER-4–6. The district court disagreed with the claim that Petitioner "affirmatively limited the scope of use of Respondents' documents" in any of its representations to the court. I-ER-9.

The district court thus discredited the argument that there could have been "reliance" on any purported "limitation" by Petitioner before the Court granted the § 1782 petition because the Protective Order "plainly allows for the use of

materials beyond the proceedings identified in the § 1782 petition" and "this Court's Order did not limit the use of the materials to the two proceedings identified by Petitioner, and neither Respondents nor [Treo] requested such a limitation in their oppositions." I-ER-9 (noting Treo's failure to request a limitation in the same paragraph it considered the arguments about Petitioner's representations to the district court). The court thus concluded: "this Court does not find that Intervenors and respondents have provided evidence of Petitioner's 'chicanery,' to justify such extraordinary relief." I-ER-11 (citing *Glock v. Glock, Inc.*, 797 F.3d 1002 (11th Cir. 2015)). In other words, there can be no complaint about the Novalpina's use of the documents on this record.

Treo complains that the district court's citation to *Glock* amounted to the application of the wrong legal standard. Br. 35. But the district court only discussed *Glock* and *Accent Delight* because Treo argued that its evidence demonstrated the sort of misconduct that those courts referred to a "chicanery." II-ER-150–54; II-ER-85. Indeed, Treo relies on precisely the same argument and language in its Rule 8 Motion to this Court. *See* DOC. 9, at 14. The district court did not require "chicanery" as an independent legal standard, but instead merely analyzed whether Treo's evidence was similar to that described in *Glock* because that is what Treo asked it to examine. *See* II-ER-150–54; II-ER-85.

Only the district court can say whether it was misled, and here, it unequivocally determined that it was not. In any case, as discussed above, Treo misrepresents the record when it argues that Petitioner misled the district court. While Petitioner sought the documents identified in its subpoenas for use in two

particular proceedings, it never disclaimed the possibility that they could be useful in other proceedings. II-ER-305–07, supra at 12–14. Petitioner notified the Court that two new proceedings had been filed during the pendency of the § 1782 litigation, and that should the Court deny the petition on the basis asserted, Petitioner would seek leave to obtain the documents based on the new proceedings. This disclosure elicited no comment from Respondents or Treo, much less an affirmative request to prevent such possible use. II-ER-306. Treo does not deny that the uses it complained of occurred after the entry of the Protective Order in response to issues arising after the Petition was filed and/or the order granting discovery was entered.

Nor would Petitioner have any reason to affirmatively hamstring itself in future litigation. When it filed the Petition, it did not know what it would find in the documents, whether Luxembourg counsel would find it relevant to issues raised by Treo in the pending proceedings that were not offered to satisfy the statutory requirements of § 1782, or what Treo might argue in various proceedings after the filing of the Petition. The default rule of the use of discovery is that "lawfully obtained" in a § 1782 proceeding may be used in other litigation proceedings unless a district court orders otherwise. *See Glock*, 797 F.3d at 1008; *Bouvier v. Adelson (In re Accent Delight Int'l Ltd.)*, 869 F.3d 121, 135 (2d Cir. 2017) *(In re Accent Delight)*. No party to the 1782 proceedings argued to the contrary.

Nor have courts embraced any contrary rule. None have found that a sheer possibility of use in other proceedings—even if apparent at the outset—amounts to chicanery warranting denial of a § 1782 Petition. For instance, in *Fed. Republic of*

*Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 158 (2d Cir. 2022), Nigeria had sought discovery for use in Nigerian proceedings, but the district court denied the petition, swayed by respondents' contention that it Nigeria might *really* want to use the discovery in English proceedings that were not one of the bases of the petition. The Second Circuit reversed, ruling that even if Nigeria did end up using documents in other proceedings, there would be nothing improper about it. *Id.* at 157. It held that the "possibility of use in a different but independently qualifying proceeding does not constitute an attempt to "circumvent" a proof gathering restriction or policy of the United States or a foreign state" and thus the existence of and use of documents in other litigation should not be construed against a petitioner. *Id.* at 158. The Court further rejected claims of Nigeria's "dishonesty" about its intentions, since it was "within its rights" to use the documents in other proceedings, thus rendering the intent to do so, if any, irrelevant.

That Petitioner adhered to the default rule of the use of discovery and obtained consent for its broader use of that discovery in a protective order—both acknowledged by the District Court—is more than enough to show that Treo's motion was properly rejected on the merits.

### 3. The District Court Did Not Err in Finding a Lack of Dispute about Compliance with the Subpoenas

The district court did not err in granting Petitioner's Motion to Compel. Br. 8, n. 4. When it observed that "No party appears to dispute that Respondents must comply with Petitioner's subpoenas," it cited parenthetically Respondents' own cross-motion: "Respondents intend to complete their production and produce

a privilege log in compliance with the subpoenas." I-ER-8. The motion to compel sought no relief from Treo and a litigant generally does not have the right to object to a subpoena to another entity unless there is some claim of right or privilege, which Treo could not make. *See Achcar-Winkels v. Lake Oswego Sch. Dist.*, No. 3:15-cv-00385-ST, 2015 U.S. Dist. LEXIS 199386, at *2 (D. Or. Dec. 11, 2015).

Treo did not directly oppose the motion to compel with a response brief, but instead filed a separate motion attacking the underlying grant of the application and the protective order. Collaterally attacking the subpoenas is not the same as objecting to the subpoenas themselves or filing an opposition to the motion to compel. *See Doi v. Halekulani Corp.*, 276 F.3d 1131, 1140 (9th Cir. 2002) (noting that failure to raise an objection waives the issue on appeal).

Even if the district court erred by not crediting Treo with an implied objection to the motion to compel, such error is harmless because the Court considered all Treo's arguments and Respondents' express opposition. Treo admits that any error was harmless when it concedes that the relief it seeks "subsumes the relief it would seek in challenging the grant of Respondents' motion to compel." Br. 9, n. 4. Treo's argument is thus irrelevant.

### 4. Treo Did Not Present Newly Discovered Evidence

Although the district court's reasoning is more than adequate, Treo is incorrect that the ruling ignored newly discovered evidence: Treo's did not present any. Treo's statement of the standard for "newly discovered evidence" is incomplete. "Newly discovered evidence" that could not have been discovered with

due diligence that is cognizable on a Rule 60 motion "must have been in existence at the time of the trial." WRIGHT & MILLER, 11 FED. PRAC. & PROC. CIV. § 2859 (3d ed.); *see also Fantasyland Video, Inc. v. Cnty. of San Diego*, 505 F.3d 996 (9th Cir. 2007) (91% collapse in business after judgment not "newly discovered evidence"). Further, a movant must

> show the evidence [] (2) could not have been discovered through due diligence, and (3) was "of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Coastal Transfer*, 833 F.2d at 211. We review the district court's determination under this standard for abuse of discretion.

*Jones*, 921 F.2d at 878 (emphasis added).

Treo's motion for reconsideration did not present any "newly discovered evidence" because the only "evidence" proffered were circumstances arising entirely after the challenged order granting the Petition. Specifically, Treo cited as evidence that 1) Petitioner grounded its Petition on two qualifying foreign legal proceedings (concededly not newly discovered evidence); and 2) that documents obtained from Respondents were used in accordance with the later negotiated Protective Order. II-ER-150–51. Neither of these qualifies under the applicable standard. The lack of any newly discovered evidence is fatal to the motion for reconsideration and this appeal. *See, e.g., Brodheim v. Conerly*, 32 F. App'x 965 (9th Cir. 2002) (dismissing appeal of Rule 60(b) motion without "mistake inadvertence, surprise, excusable neglect, [or] newly-discovered evidence").

Nor does this evidence show any wrongdoing. The negotiated order preserved the status quo, which was that there are no restrictions on the use of evidence

obtained pursuant to § 1782 unless a court expressly rules otherwise. *See In re Accent Delight*, 869 F.3d at 135 ("In sum, we hold that Section 1782 does not prevent an application who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise"); *see also Glock*, 797 F.3d at 1011 (holding that discovery obtained for a foreign proceeding under Section 1782 may be used in domestic litigation unless against the plain terms of a Protective Order).

Negotiating a protective order at arm's length is not "newly discovered evidence" of anything, much less of "chicanery" that could warrant the reconsideration of a § 1782 order. To the contrary, the prescription of courts to consider this issue have instructed that even if there *is* evidence of chicanery, the parties should negotiate a protective order about where documents may be used, which is *exactly* what was done here. *See Glock*, 797 F.3d at 1009.

Even if somehow the Protective Order as negotiated were to be deemed "newly-discovered evidence" and in existence when the court granted the Petition, then Treo's argument would *still* fail because the proposed order was discoverable through reasonable due diligence: it was on the docket for three weeks, had been "expressly requested" by Treo itself, and Treo was on notice of the proceedings and an active participant in them. II-ER-283, 269, 258. Treo avers that reading the Protective Order was not enough to put it on notice that the Protective Order allowed "use or disclosure of Protected Material" by "Interested Parties in litigation relating to the events described in the Petition" (II-ER-263):

> [S]uch evidence could not have been previously identified with reasonable diligence because it did not become apparent until the misuses occurred, all of which post-dated the district court's decision granting the Petition. . . Because [Petitioner] misled [Treo], Respondents, and the district court about its true intentions, [Treo] could not have had such evidence in its position, nor could it have discovered [Petitioner's] intent through reasonable diligence.

Br. 36 (emphasis added). Aside from the fact that this is incredible on its face, to rule in Treo's favor on this point would mean that any time a party fails to comprehend the plain language of an agreement and loses a challenge, that a district court has *abused its discretion.* This cannot possibly be the law. As the district court rightly observed, no one was misled:

> Section 4.1 of the Protective Order is unambiguous: Certain individuals are permitted to use protected material "in litigation relating to the events described in the Petition." . . .
>
> . . . Respondents argue that, through [its] representations, Petitioner affirmatively limited the scope of use of Respondents' documents, and Respondents claim that they relied on that limitation. But if that were the case, then Respondents would not have stipulated to a protective order that plainly allows for the use of materials beyond the two proceedings identified in the § 1782 Petition.

I-ER-9. Likewise, had Treo believed that there were any affirmative limitations on the use of the documents, it would not have consented to the Protective Order when it was filed. *Id.*

Treo insists that the district court's failure to acknowledge that it was misled warrants reversal. Br. 49. But Treo is not the arbiter of whether a court was misled; the court is. And the district court not only reaffirmed the fact that its order had no limitations, but based its argument on the fact that *no one* could be misled by the

plain language of its order granting the 1782 or the agreed protective order. Treo's own professed and belated confusion is not grounds to reverse the district court's order.

### 5. Petitioner's Proper Use of Evidence Obtained Under Section 1782 Does Not Shift the *Intel* Analysis, Nor Could It

This appeal is nothing more than an attempt to appeal the district court's decision to grant the Petition. This is Treo's third bite at that apple. Here, it argues (Br. 32–33, 36–44) that the *post hoc* use of discovery should affect the analysis of the *Intel* factors in determining whether Section 1782 discovery was warranted in this first instance.[4] This argument is thoroughly flawed.

First, the determination at the core of this issue regarding the *Intel* factors, as advanced by Petitioners in its memorandum of law in support of the petition (IV-ER-695) and as adopted by the district court (II-ER-296), is whether the discovery sought is *obtainable*, not whether the target is a party to the case for which the discovery is sought. *In re Application of Joint Stock Co. Raiffeinsenbank*, No. 16-mc-80203-MEJ, 2016 WL 6474224, at *4 (N.D. Cal. Nov. 2, 2016) (interpreting the first *Intel* factor). Even if Treo could appeal the district court's original decision, Respondents—the targets of the subpoenas—have not appealed the use of discovery against them. All that is left to consider is the use of discovery against *Treo*.

The first *Intel* factor is concerned with whether the "person *from whom discovery is sought* is a participant in the foreign proceeding." *Khrapunov v.*

---

[4]   Treo does not elaborate on precisely which *Intel* factor is impugned by later use of discovery in accordance with a protective order. *See* Br. 36–44.

*Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (emphasis added). Treo, as an intervenor and not the entity from which the discovery is sought, is outside the bounds of the district court's consideration of the first *Intel* factor. The use of the documents against Treo in a foreign proceeding in which Intervenor-Treo, and not Respondent-Langdon, is a party does trigger any review at all. Where Langdon is a party to a proceeding, the right to challenge on the basis of the *Intel* factors would lie with him, and not Treo.

Second, there are no grounds to entertain Treo's grumbling that § 1782 discovery provides an advantage to a litigant before foreign courts with more restrictive discovery regimes. Br. 32–33, 43.[5] That § 1782 is broader than foreign courts' disclosure rules is a feature, not a bug, of the statute. Section 1782 "is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). When addressing this issue, courts have stressed that "the sponsors of the legislation hoped that the provision for formal judicial assistant not only would enable full assistance to be

---

[5]    Treo cites *In re Premises Located at 840140th Ave. NE, Bellevue*, 634 F.3d 557, 563 (9th Cir. 2011) for the proposition that courts have "broad discretion to decide whether and to what extent" to grant a 1782 Petition. *Id.* (quoting *Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002)). While Treo bolded and italicized the phrase "to what extent", this does not mean it is relevant. *Four Pillars* concerned whether the district court trimmed too much from the discovery requests.

made available, but also would furnish '. . . an example of *unilateral, nonreciprocal, internal legislation*, . . . which other countries may wish to follow.'" *John Deere, Ltd. v. Sperry Corp.*, 754 F.2d 132, 135 (3d Cir. 1985) (citation omitted).

Congress made this policy choice with "twin aims" to "provid[e] equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects" and thereby to "invite foreign countries similarly to adjust their procedures." *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) (quoting S. Rep. No. 88–1580, at 2). In § 1782(a), Congress pursued those aims by "clarify[ing] and liberaliz[ing] existing U.S. procedures for assisting foreign and international tribunals." S. Rep. No. 88–1580, at 7. The disparity between § 1782 and Luxembourg's disclosure laws is expected, not disqualifying, and courts thus consistently grant petitions seeking discovery for use in jurisdictions with far less robust disclosure mechanisms. Even major differences between disclosure regimes "does not amount to circumvention and does not militate against approval." *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-MC-80215-WHO(TSH) 2020 WL 820327, at *5 (N.D. Cal. Feb. 19, 2020).

The district court recognized this fact, citing *Lufthansa Technik v. Panasonic Avionics Corp.*, 2017 WL 6311356, at *2 for the proposition that discovery is favored when there are "jurisdictional limitations" in the foreign court. In the context of that case, the "jurisdictional limitations" were limited procedures for discovery in the foreign jurisdiction where suit was pending. *In re Technik*, No. C11–1386-JCC, 2011 U.S. Dist. LEXIS 162826, at *6 (W.D. Wash. Oct. 6, 2011).

**B.      The District Court's Denial of Treo's Motion to Modify the Protective Order Was Within Its Discretion**

Treo argues that the district court failed to give "independent consideration to Treo's motion or its interests." Br. 45. But Treo's argument misrepresents both its own motion and the district court's order. Treo's motion did not articulate interest or argument "independent" from Respondents', and it was no abuse of discretion for the district court to not address arguments that Treo never made. Treo's continued failure to identify any cognizable harm belies Treo's lack of standing for this appeal. In short, Treo's misinterpretation of the record cannot change both that the district court properly applied the correct legal standard in denying Treo's motion to modify the protective order and that Treo waived its objections by failing to object to the protective order after it had received notice of its full text.

**1.      The District Court Applied the Correct Legal Standard to the Motions to Modify the Protective Order**

The district court's Order devotes a full paragraph to describing the standard for a motion to modify a protective order. II-ER-75 (articulating a "good cause" standard). Treo concedes that the district court properly applied a "good cause" standard (Br. at 46), but contends that the district court got it wrong because it did not recognize Treo's "distinct arguments." Br. at 47–48 ("The district court's analysis of Respondents' motion – i.e. the sole asserted basis or the denial of Treo's Motion – was wholly inapplicable to Treo.").

It is worth asking how, exactly, the Protective Order even affects Treo, if at all. Since Treo never made any showing that its confidential information was at

issue, the Protective Order only affects Treo if it meaningfully changed the scope of the underlying order granting the Petition. The district court denied the motions to amend in part because: "the Protective Order does not contravene this Court's Order granting the § 1782 Petition." I-ER-3. As such, the denial of Treo's motion to modify is just maintenance of the status quo in place from when the Petition was granted.

Treo acknowledges that the district court expressly denied Respondents' motion to modify the protective order for failure to articulate good cause. II-ER-75–89 ("Respondents' subsequent remorse regarding that provision does not amount to the good cause necessary for this Court to modify the Protective Order."). Treo also concedes that the district court referenced this reasoning in denying Treo's motion to modify. Br. at 47 (conceding that the Order's reference to "the reasons explained above" refers to the reasons articulated to deny Respondents'' motion); I-ER-11 ("Intervenors' . . . alternative request to amend the Protective Order is denied for the reasons explained above").

Contrary to Treo's assertion, the district court's logic applies equally to Treo, whose subsequent remorse in not objecting to the protective order is not good cause to amend it. Treo presents no authority that inattentiveness to a case docket in which it was actively participating and feelings of *post hoc* regret may amount to good cause sufficient to modify a protective order that it requested, but delegated to another party to negotiate.

Treo argues that, unlike Respondents, Treo was not a party to the protective order, but Treo does not explain how this provided an independent ground that the

district court was required to consider. Br. at 48. Treo does not contend that it sought to protect its interests, if any, and participate in negotiation of the protective order, that Respondents barred it from doing so or refused to share the draft orders. For all Petitioner knows, Treo *did* receive the drafts of the protective orders as it was negotiated. Treo had ample opportunity to review the protective order, but chose not to do so. It is irrelevant to its motion to modify and undermines both its standing and its argument that the district court should have evaluated "the [unarticulated] risk of harm to Treo." Br. at 47. Indeed, Treo was every bit the "sophisticated adversar[y]" as Respondents, and the district court's reasoning that a party should live with the consequences of its own decisions applies to Treo with equal force. I-ER-9. As the district court noted, "neither Respondents *nor Intervenors* requested such a limitation [as requested in the motions to modify] in their oppositions." I-ER-9.

Finally, Treo argues that the district court failed to consider its "distinct argument" that "that the Protective Order was inconsistent with Petitioner's prior representations to the Court and was being manipulated to permit uses of the discovery sought that were inconsistent with the applicable statutory and discretionary factors of Section 1782." Br. at 48. As an initial matter, the district court did in fact consider—and reject—this exact argument: "Respondents point this Court to representations made by Petitioner when this Court was considering whether to grant the § 1782 Petition" that "affirmatively limited the scope of use

of Respondents' documents, and Respondents claim that they relied on that limitation." I-ER-9. Treo fails to explain what "distinct arguments" it made that merited the district court's further examination.

As set forth above, Petitioners' representations to the district court were at all times consistent with the statutory and discretionary standards governing § 1782, which, in line with the rules governing domestic discovery, generally permit the use of disclosed information in any proceeding. Treo relies on both *Glock* and *Accent Delight*, conceding that they should guide this Court, (Br. at 29–30, 42, 49–50), and argues that these cases are in "tension" with *Khrapunov v. Prosvankin*, 931 F.3d 922, 925 (9th Cir. 2019). Br. at 48. But *Khrapunov* had nothing to say about the use of disclosed information in a proceeding other than the foreign proceeding identified in a § 1782 application. *See id.* at 922.

The Eleventh Circuit in *Glock* and the Second Circuit in *Accent Delight* have considered this issue in depth. In *Accent Delight*, 869 F.3d at 135, the Second Circuit held that "Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court decides otherwise." And in *Glock*, 797 F.3d at 1009, the Eleventh Circuit held that, like ordinary lawfully obtained discovery, § 1782 does not limit the use of discovery to the proceeding for which it was sought. It advised that "[w]hen subsequent challenges arise, the § 1782 court, having entered the § 1782 order and, if applicable, the governing protective order, is in the best position to quickly evaluate allegations of improper use of § 1782 and the meaning of any governing protective order". *Id.*

*Khrapunov* does not contradict either case. Instead, *Khrapunov* stands for the proposition that when "the factual circumstances surrounding [the Section 1782] application . . . change[] dramatically," a district court can and should reconsider "whether the statutory requirements for discovery under § 1782 remain satisfied and whether, as a matter of the district court's discretion, discovery remains appropriate." *Khrapunov*, 931 F.3d at 924. Here, no facts have changed, and certainly not with respect to Treo as an intervenor.

Thus nothing in this Court's precedent contradicts the basic rule that nothing precludes a party from using discovery obtained in a case "from using that evidence in a wholly separate lawsuit against the same defendant or a different party." *Accent Delight*, 869 F.3d at 135 ("The Federal Rules of Civil Procedure do not regulate what litigants may do with discovery after it lawfully has been obtained"). There was no good cause to modify a protective order that incorporated aspects of that principle with an agreement that the documents could be used by Interested Parties in factually related litigation. As this Court has stated, "[T]his court strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation. Allowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) (internal citations omitted). A district could has similar discretion when supervising discovery under § 1782 as when supervising discovery in domestic litigation, and may enter appropriate protective orders, as the district court did here.

Treo points to no authority as to how the district court exceeded its discretion when it found no good cause to modify the protective order after it was entered without objection and followed to the letter.

### 2. Treo Waived Objections to the Protective Order

That Treo did not itself negotiate the Protective Order is irrelevant. Treo asked Respondents to act on its behalf by requesting Respondents to obtain the Protective Order to govern the use of its unspecified confidential information (if any). Treo concedes as much in its reliance here and below on the language in Respondents' Unopposed Motion for a Protective Order: "one third party, TREO Asset Management, whose confidential information may be produced under the Subpoenas, has expressly requested that OPERF take steps to preserve the confidentiality of certain information that may be provided in response to the Subpoenas." II-ER-271; Br. at 22.

As the Order states, the motion for the Protective Order was filed in January 2024. I-ER-4 (citing II-ER-283–91). The Court rejected the motion and directed "the party or parties seeking protection" to re-file. II-ER-282. Respondents filed a revised motion for Protective Order on February 3. II-ER-268–71. The Court did not grant that motion until February 13, 2024. II-ER-258–67. Treo—indisputably sophisticated parties—had 20 days to oppose or object to the proposed Protective Order. Treo did not.

Treo protests that it did not timely object because its "concerns . . . did not manifest" until later. Br. 45–46, n. 14. This is no excuse. It is black letter law in

this Circuit that "if a party fails to raise an objection to an issue before judgment, he or she waives the right to challenge the issue on appeal." *Doi*, 276 F.3d at 1140. Failures to oppose motions are treated as consent, including in the District of Oregon. *Coltman v. Carrington Mortg. Servs., LLC*, 2024 WL 2976230, at *1 (D. Or. June 13, 2024) (no relief for party that failed to oppose motion). Thus, where a court enters an order approving a stipulation or settlement and no objections are made, a party may not challenge that settlement or order on appeal.

Contrary to Treo's claims, its failure to object to the Protective Order was addressed below (Br. at 45, n. 11); Petitioner's opposition to both Treo's and Respondents' motions to modify the Protective Order was based on the agreement of the parties and the unopposed motion for the Protective Order. II-ER-38. That Treo failed to object to Unopposed Motion or the proposed Protective Order means that it cannot now complain to the Court, and it certainly is not entitled to belatedly attempt to reverse the Protective Order on appeal.

Treo's reliance on *Coastal Transfer* is misplaced. Br. 34–36. Presumably, Respondents' and Treo's joint remorse in failing to properly apprehend the unambiguous language of the proposed order would fall under the same type of error this Court held does not entitle the movant to reconsideration:

> [] Coastal's argument falls short because the evidence upon which the expert's testimony was based had been in Coastal's possession since the start of litigation. Evidence is not "newly discovered" under the Federal Rules if it was in the moving party's possession at the time of trial or could have been discovered with reasonable diligence. *Engelhard Industries, Inc. v. Research Instrumental Corp.*, 324 F.2d 347, 352 (9th Cir. 1963), *cert. denied*, 377 U.S. 923, 12 L. Ed. 2d 215, 84 S. Ct. 1220 (1964); *accord Area Transportation Authority v. Missouri*, 640 F.2d 173, 175 (8th Cir. 1981*). See also* 11 Wright & Miller

43

§ 2859 (1973) ("Under both rules [59 and 60], if [the evidence] was in the possession of the party before the judgment was rendered it is not newly discovered . . ."). This fact of possession also makes clear that Coastal did not use due diligence to discover its expert's error. The fact that Walters analyzed data from the wrong year should have been apparent to anyone familiar with the date of Coastal's termination by Toyota.

*Coastal Transfer Co. v. Toyota Motor Sales*, 833 F.2d 208, 212 (9th Cir. 1987). As with the party in *Coastal Transfer*, Treo failed to analyze unambiguous language and now attempts to unwind the clock by casting aspersions on both Novalpina and the district court, despite the fact that the fault rests entirely on itself.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Treo's appeal.

Sequor Law

Respectfully submitted,

Dated: January 27, 2025

By: /s/ Tara J. Plochocki
_____

Attorney for Petitioner - Appellee
NOVALPINA CAPITAL
PARTNERS I GP S.A.R.L

## Statement of Related Cases

*9th Cir. Case Number(s): No. 24–4835*

The undersigned attorney or self-represented party states the following:

I am unaware of any related cases currently pending in this Court.

Dated: January 27, 2025                    By:  /s/ Tara J. Plochocki

## Certificate of Compliance

I certify that this brief complies with the formatting requirements of the type-volume limitation set forth in Federal Rule of Appellate Procedure 32 and the page limitation set forth in Ninth Circuit Rule 32–1. This brief uses proportional typeface and 14-point font, contains **11,887** words.

Dated: January 27, 2025       By:  /s/ Tara J. Plochocki

**Certificate of Service**

I hereby certify that on January 27, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated: January 27, 2025      By:   /s/ Tara J. Plochocki