No. 24-4835

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

NOVALPINA CAPITAL PARTNERS I GP S.A.R.L.,

*Petitioner-Appellee,*

v.

TOBIAS READ AND MICHAEL LANGDON,

*Respondents,*

and

TREO ASSET MANAGEMENT LLC AND TREO NOAL GP SARL,

*Intervenor-Appellants.*

On Appeal from the United States District Court for the District of Oregon
Hon. Karin. J. Immergut
Case No. 3:23-mc-00082-IM

## REPLY BRIEF OF THE INTERVENOR-APPELLANTS TREO
## ASSET MANAGEMENT LLC AND TREO NOAL GP SARL

Sagar K. Ravi
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street, NW
Washington, DC 20001
(202) 756 8043
sravi@mwe.com

Edward B. Diskant
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, NY 10017-3852
(212) 547 5754
ediskant@mwe.com

*Attorneys for Intervenor-Appellants
Treo Asset Management LLC &
Treo NOAL GP SARL*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS......................................................................... i

TABLE OF AUTHORITIES .................................................................. ii

INTRODUCTION ..................................................................................1

ARGUMENT ..........................................................................................5

I.   TREO HAS STANDING TO APPEAL ..........................................5

II.  THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING TREO'S MOTION FOR RECONSIDERATION ....................................12

III. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING TREO'S MOTION TO MODIFY THE PROTECTIVE ORDER.............19

CONCLUSION ......................................................................................23

## <u>TABLE OF AUTHORITIES</u>

*100Reporters LLC v. United States Dep't of Just.*,
 307 F.R.D. 269 (D.D.C. 2014) ........................................................11

*Application of Sarrio, S.A.*,
 119 F.3d 143 (2d Cir. 1997) ............................................................7

*Brandt v. Am. Bankers Ins. Co. of Fla.*,
 653 F.3d 1108 (9th Cir. 2011) ........................................................14

*Church of Scientology of Cal. v. United States*,
 506 U.S. 9 (1992) ..........................................................................11

*Delay v. Gordon*,
 475 F.3d 1039 (9th Cir. 2007) ..........................................................4

*Diamond v. Charles*,
 476 U.S. 54 (1986) ..........................................................................6

*Didrickson v. U.S. Dep't of Interior*,
 982 F.2d 1332 (9th Cir. 1992) ..........................................................6

*Doi v. Halekulani Corp.*,
 276 F.3d 1131 (9th Cir. 2002) ........................................................21

*Duke v. Gastelo*,
 64 F.4th 1088 (9th Cir. 2023) ..........................................................4

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*,
 27 F.4th 136 (2d Cir. 2022) .................................................... 16, 17

*FMC Corp. v. Boesky*,
 852 F.2d 981 (7th Cir. 1988) ..........................................................11

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
 331 F.3d 1122 (9th Cir. 2003) ........................................................20

*Glock v. Glock, Inc.*,
 797 F.3d 1002 (11th Cir. 2015) .............................................. 13, 22

*Hillis v. Heineman*,
 626 F.3d 1014 (9th Cir. 2010) ........................................................20

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017) ..........................................................22

*In re Ambercroft Trading Ltd.*,
No. 18-mc-80074, 2018 WL 4773187 (N.D. Cal. Oct. 3, 2018) ...................7

*In re Letter of Request from Crown Prosecution Serv. of U.K.*,
870 F.2d 686 (D.C. Cir. 1989)..........................................................9

*In re Letter Rogatory from Justice Court, Dist. of Montreal, Canada*,
523 F.2d 562 (6th Cir. 1975) ..........................................................7

*In re Request for Judicial Assistance from Seoul Dist. Criminal Court, Seoul, Korea*,
555 F.2d 720 (9th Cir. 1977) ............................................. 2, 7, 8

*Jones v. Aero/Chem Corp.*,
921 F.2d 875 (9th Cir. 1990) ..........................................................13

*Khrapunov v. Prosyankin*,
931 F.3d 922 (9th Cir. 2019) ..........................................................16

*Luckey v. Mitchell*,
No. 22-16556, 2023 WL 6389399 (9th Cir. Oct. 2, 2023)...........................4

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...................................................................6

*Manufactured Home Communities Inc. v. City of San Jose*,
420 F.3d 1022 (9th Cir. 2005) ........................................................13

*Morgan v. United States*,
60 F. App'x 180 (9th Cir. 2003)......................................................19

*Novalpina Capital Partners I GP S.A.R.L. v. Oregon Dept. of Justice*,
No. 24-cv-48575 (Or. Cir. Ct. Multnomah Co.)......................................4

*Ohio A. Philip Randolph Inst. v. Obhof*,
802 F. App'x 185 (6th Cir. 2020).....................................................10

*Thomas v. Cnty. of Los Angeles*,
275 F. App'x 664 (9th Cir. 2008)......................................................20

*United States v. Hinkson*,
    585 F.3d 1247 (9th Cir. 2009) ........................................................15

*United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*,
    615 F.3d 1085 (9th Cir. 2010) ........................................................14

*W. Watersheds Project v. Kraayenbrink*,
    632 F.3d 472 (9th Cir. 2011) ...........................................................6

*Whittaker Corp. v. Execuair Corp.*,
    953 F.2d 510 (9th Cir. 1992) ................................................... 19, 21

*Yamada v. Nobel Biocare Holding AG*,
    825 F.3d 536 (9th Cir. 2016) .........................................................21

**INTRODUCTION**

This appeal arises from the ongoing abuse of relief obtained by Novalpina Capital Partners I GP S.A.R.L. ("Novalpina" or "Petitioner") pursuant to 28 U.S.C. § 1728 and the ongoing misuse of documents obtained thereby. (II-ER-80–82; II-ER-146–148). Through what Petitioner initially described to the district court as a targeted petition seeking "limited" documents for use in two specified proceedings (IV-ER-675), Petitioner has in fact sought widespread document discovery that it has since used in at least five litigations worldwide. (II-ER-99 ¶¶ 6–8; II-ER-138 ¶ 5; Br. at 18–19, 25–26 n.11). Those materials – sensitive, confidential documents obtained from a U.S. Pension Fund, the Oregon Public Employees Retirement Fund ("OPERF"), through Respondents Tobias Read and Michael Langdon in their official capacity – have been used by Petitioner in its efforts to seek hundreds of millions of dollars in fees despite having been removed as the general partner of NOAL SCSp (the "Fund") by the Fund's investors.[1]

---

[1] In its brief, Petitioner devotes considerable efforts to trying to recast the European litigation underlying the Petition as somehow arising from "fraudulent acts undertaken *by Treo NOAL GP*" and from asserted misconduct by Respondent Michael Langdon and other members of the Limited Partner Advisory Committee ("LPAC"). (*E.g.*, Br. at 4–9) (emphasis added). Those claims – which are of little relevance to the issues pending on appeal – are not only pure fiction but are belied by the record developed before the district court. Notably, as discussed herein, Petitioner – not Treo – was removed as the General Partner of the Fund based on its

1

Novalpina takes a new tack on appeal, contending for the first time that Treo NOAL GP S.À.R.L. and Treo Asset Management LLC (collectively "Treo" or "Intervenors") – who were appointed to replace Petitioner after it was ousted from its role in managing the Fund – lacks standing because they have not suffered any injury likely to be redressed by this Court's ruling. Not so. It is black-letter law that Treo, as the party against whom the documents obtained in the Section 1782 Proceeding have been used and will continue to be used, has standing to challenge the Petition and the use of documents thereby obtained. *In re Request for Jud. Assistance from Seoul Dist. Crim. Ct., Seoul, Korea*, 555 F.2d 720, 723 (9th Cir. 1977). Treo intervened on that basis, filed motions for reconsideration and to modify the protective order on that basis, and now has standing to appeal the denial of those motions.

---

mismanagement. (III-ER-313 ¶ 7). Petitioner – not Treo – is under criminal investigation in Europe. (IV-ER-553 n.3). And Petitioner – not Treo – is currently under investigation by the Oregon Department of Justice. (*Novalpina Capital Partners I GP S.A.R.L. v. Oregon Dept. of Justice*, No. 24-cv-48575 (Or. Cir. Ct. Multnomah Co.)). Indeed, the only suggestion of "fraud" by Treo or Langdon is the assertion advanced by Novalpina GP as part of its Petition that it intended to commence a civil fraud action in Luxembourg, which was one of the stated bases for the discovery sought. More than two years have passed since that representation was made to the district court, and no such fraud action has ever materialized. While Treo could of course directly rebut and refute substantially all of Petitioner's baseless accusations, because, as noted, they are of no direct relevance to the issues pending on appeal, Treo does not address them further herein.

2

Moreover, in telling this Court that Treo's concerns are unlikely to be redressed by a favorable opinion, Petitioner conveniently omits that (i) it *continues to misuse* documents already obtained in a manner the modified protective order Treo seeks would not permit, and (ii) it *continues to seek* additional and highly sensitive documents pursuant to the Petition, documents it could not seek should this Court reverse the district court's denial of Treo's motion for reconsideration, and documents whose use would be significantly curtailed should this Court reverse the district court's denial of Treo's motion to modify the protective order. Indeed, just twenty-four hours after filing its opposition brief on appeal, Petitioner commenced a motion to compel before the district court seeking the production of approximately *2,000* additional documents, all of which had been withheld or redacted by Respondents as privileged, and many of which had been identified by Respondents as being in common interest privilege with the other limited partners in the Fund whose interests Treo represents. (I-FER-8). And while Petitioner further argues that Respondents have not themselves appealed, Petitioner similarly omits that, in the time since Treo's opening brief was filed, it has become a matter of public record that Oregon's Department of Justice has opened an investigation into whether Novalpina GP defrauded OPERF while running the Fund. *Novalpina Capital*

3

*Partners I GP S.A.R.L. v. Oregon Dept. of Justice*, No. 24-cv-48575 (Or. Cir. Ct. Multnomah Co.).[2]

Petitioner's arguments as to the merits are no more availing. With respect to the motion for reconsideration, Treo pointed to the district court's failure to apply the appropriate standard or explain its decision *at all*. (Dkt. 20 ("Br.") at 26 (citing I-ER-2–11)). Unable to meaningfully dispute those failures, Petitioner instead seeks to invent a rationale that might support the district court's decision. Those efforts fail both because they cannot supplant the district court's failure to do the same and, more important, because they are unavailing: the record below makes clear that Treo established each essential element of its motion for reconsideration.

With respect to the motion to modify the protective order, Petitioner similarly cannot overcome the district court's complete failure to meaningfully engage with Treo's arguments below or make findings specific to support its denial of Treo's motion. *Delay v. Gordon*, 475 F.3d 1039, 1043 (9th Cir. 2007). Notably, Petitioner does not dispute that it *agreed* that the need to protect Treo's confidential

---

[2] While Petitioner criticizes Treo for drawing this Court's attention to filings made in the related litigation in the Southern District of New York, there is nothing improper in so doing. This Court can and does take judicial notice of publicly docketed court filings, particularly whereas here those filings involve the same parties. *See* Fed. R. Evid. 201(b), (c); *Duke v. Gastelo*, 64 F.4th 1088, 1093 n.3 (9th Cir. 2023) (taking judicial notice under Rule 201(b) of dockets where appellant is also a party-litigant); *Luckey v. Mitchell*, No. 22-16556, 2023 WL 6389399, at 1 n.2 (9th Cir. Oct. 2, 2023) (mem.) (same). It should similarly take judicial notice of the subsequent court filings cited above.

information was among the grounds for entry of the Protective Order in the first place. And to the extent it now has "remorse" about making that representation, that "does not amount to [ ] good cause" for Petitioner to *now* claim otherwise. (I-ER-9). Petitioner's waiver argument – itself never raised before the district court and thus plainly waived – fails because there is no question that Treo sought the requested relief before and prior to entry of the judgment. And it ignores Petitioner's own role in concealing its true intentions in its court filings and statements. Indeed, while claiming there was no suggestion of "fraud in the inducement" with respect to the Protective Order (Opp. at 3), on the contrary, Respondents made clear in their filings below how they had been misled in such negotiations.

## **ARGUMENT**

### I.    **TREO HAS STANDING TO APPEAL**

Petitioner contends that Treo lacks standing to pursue its appeal because it cannot establish that the "district court's judgment cause[d]" Treo "a concrete and particularized injury that is actual or imminent and is likely to be redressed by a favorable decision." (Opp. at 18-19). The argument fails because Treo – as the party against whom the sought documents are to be used in foreign proceedings – has a cognizable interest in the Petition and continues to suffer cognizable injury from Petitioner's access to and misuse of documents thereby obtained. Moreover, those injuries would be directly redressed by a favorable opinion from this Court.

An intervenor has standing to appeal a judgment below where "he fulfills the requirements of Art. III." *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 482 (9th Cir. 2011) (quoting *Diamond v. Charles*, 476 U.S. 54, 68 (1986)). To do so, an intervenor must only establish that "the district court's judgment causes [intervenor] a concrete and particularized injury that is actual or imminent and is likely to be redressed by a favorable decision." *Id*. at 482 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Importantly, "[i]ntervenors' standing need not be based on whether they would have had standing to independently bring this suit, but rather may be contingent on whether they have standing now based on a concrete injury related to the judgment." *Id*. (citing *Didrickson v. U.S. Dep't of Interior*, 982 F.2d 1332, 1138 (9th Cir. 1992) ("the test is whether the intervenor's interests have been adversely affected by the judgment")); *see also Yniguez v. State of Ariz.*, 939 F.2d 727, 731–34 (9th Cir. 1991) (intervenor had standing to pursue appeal by alleging a threat of particularized injury from the order that is redressable by successful appeal). Here, Treo meets that standard with respect to each aspect of its appeal.

*First*, Treo has standing to appeal the denial of its motion for reconsideration because "[i]t is well-settled that a party against whom the requested information will be used has standing to challenge the issuance of § 1782 subpoenas under the Rules of Civil Procedure and under the statute itself." *In re Ambercroft Trading Ltd.*, No.

6

18-mc-80074, 2018 WL 4773187, at *4 (N.D. Cal. Oct. 3, 2018) (collecting authorities); *Request for Jud. Assistance from Seoul Dist. Crim. Ct., Seoul, Korea*, 555 F.2d at 723 ("The party against whom requested [information is] to be used has standing to challenge the validity of the order [ ] to produce the records"); *In re Letter Rogatory from Justice Court, Dist. of Montreal, Canada*, 523 F.2d 562, 564 (6th Cir. 1975) (while the underlying § 1782 discovery order was issued to a third party, the ultimate targets of the discovery had "standing to challenge the district court's power to issue a subpoena under the terms of the authorizing statute").

For the same reasons, Treo also had standing to bring its motion for reconsideration which challenged the original Petition and through which Treo presented the district court with new evidence of abuse and misuse by Petitioner of documents obtained pursuant to the Petition. Indeed, Treo's cognizable interest has remained constant throughout this litigation; Treo was and remains the party against whom the discovery sought will be used and is challenging the lawfulness of the Petition and the use of documents thereby obtained, which is, of course, the heart of both of its motions below. *Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997) ("[P]arties against whom the requested information will be used may have

standing to challenge the lawfulness of discovery orders directed to third parties[.]").[3]

Notably, while selectively quoting (out of context) aspects of an oral argument before the district court, Petitioner effectively concedes, as it must, that Treo had standing to challenge the Petition (*e.g.*, Opp. at 21) and fails to explain why or how the standing analysis changed on appeal.[4] That is because the analysis has not changed: it remains the case that Treo is "the party against whom [the] requested . . . records are to be used." *Request for Jud. Assistance from Seoul Dist. Crim. Ct., Seoul, Korea*, 555 F.2d at 723. And it remains true that Treo, as "[a] person . . . against whom information obtained under section 1782 may be used, has standing to assert that, to his detriment, the authority for which the section provides is being

---

[3] While the district court, without explanation and in a docket entry, indicated that it was granting Treo's motion to intervene pursuant to Rule 24(b), it otherwise made no findings as to Treo's standing. Irrespective, because this Court has an independent obligation to satisfy itself of Treo's standing on appeal, it can and should conclude that Treo has standing for the reasons set forth above.

[4] To the extent Petitioner notes that Respondents did not appeal, Respondents also did not move for reconsideration below, relief Treo sought in its own right based on its own independent interest in the proceeding. Respondents did not challenge Treo's standing to do so below. More generally, that Respondents have not joined in this appeal is of no moment given the clear and uniform authority that affirms that Treo has its own, independent standing to litigate both the district court's denial of its Motion for Reconsideration and the denial of its Motion to Modify the Protective Order. Indeed, as that case law recognizes, because the party against whom the sought documents will be used is both better positioned and more motivated to litigate issues of abuse and misuse, it is not uncommon that an intervenor may take the lead in litigating the contours of production rather than a third-party subpoena recipient whose role may be limited to producing documents.

abused." *In re Letter of Request from Crown Prosecution Serv. of U.K.*, 870 F.2d 686, 689 (D.C. Cir. 1989) (noting the "precedent on this point is uniform").[5] As noted, that was the heart of Treo's motions below – that Section 1782 was being "abused" by Petitioner to Treo's "detriment." And much as a favorable decision from the district court would have prevented Petitioner from obtaining and misusing documents pursuant to the Petition going forward, so too would a favorable ruling from this Court. That alone is sufficient to establish Treo's standing to appeal.

For similar reasons, Treo also has standing to pursue its appeal of its Motion to Modify the Protective Order. Once again, there is no question that the Motion to Modify the Protective Order directly implicates both the use (and abuse) of Section 1782, as highlighted above, as well as the manner in which the documents may be used against Treo to its "detriment." Indeed, central to the dispute over the Protective Order is Novalpina GP's "abuse" of Section 1782, the relief afforded by the district court, and the need to redress that relief and the ongoing injuries which

---

[5] Indeed, Petitioner took the opposite position in opposing a stay pending appeal, telling the district court that "[w]hile Intervenors can certainly challenge the denial of that motion on appeal, the Ninth Circuit is bound to see, as this Court did, that the agreed Protective Order is unambiguous on its face, the time to oppose it would have been before it was granted and the parties acted in reliance on it, and there is no good cause to amend it now." (I-FER-28; *see also* I-FER-22 n.1 (contesting Treo's standing to appeal denial of *Respondents'* cross-motion to amend but making no challenge to Treo's standing to appeal its own motion).)

have stemmed from that decision – a remedy which could be obtained through a favorable opinion from this Court.

Petitioner simultaneously faults Treo for not inserting itself into the negotiation of the Protective Order – or opposing its contours *sooner* (*see* Opp. at 38–39) – while counterintuitively claiming Treo actually lacked standing to do either. Neither of those claims are true. As discussed in Section III, below, the first argument fails on the facts and omits Petitioner's own role in misleading both Respondents and Treo as to its intentions in negotiating the Protective Order. But as to the second, and in addition to Treo's standing to challenge the lawfulness of the Petition itself, there can be no serious dispute that the documents at issue contain the Fund's confidential information,[6] including Treo's communications with the Fund's investors regarding the operation of the Fund. Notably, Intervenors here represent the Fund's interests. Treo NOAL GP is the general partner of the Fund whose obligation is to ensure the Fund's confidential information is suitably protected, which provides a second, independent basis for finding that Treo has suffered and continues to suffer a concrete injury. Indeed, it is well established that parties have a cognizable interest in prohibiting the disclosure and dissemination of their confidential information and documents. *See, e.g.*, *Ohio A. Philip Randolph Inst. v. Obhof*, 802 F. App'x 185, 186–187 (6th Cir. 2020) (per curiam) ("Parties

---

[6] The Intervenors here include not just Treo Asset Management but Treo NOAL GP.

have an 'obvious possessory interest' in material disclosed during discovery . . . .")
(citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992)); *see
also 100Reporters LLC v. United States Dep't of Just.*, 307 F.R.D. 269, 284 (D.D.C.
2014) (finding "the imminent and concrete risk of the proposed intervenor's
confidential materials being released" to establish Article III standing); *FMC Corp.
v. Boesky*, 852 F.2d 981, 990 (7th Cir. 1988) (misappropriation of confidential
business information constituted adequate injury in fact to establish Article III
standing).

On appeal, Petitioner contends that Treo has not "made any showing . . . that
its own confidential documents were at issue in Respondents' document
production." (Opp. at 3). Petitioner is wrong. As an initial matter, and as argued
more fully above, the Court need not reach that issue to find that Treo has standing
to challenge the denial of its motion to modify the Protective Order. But even
assuming the Court were to address the argument, it fails on the facts. In seeking
the Protective Order, Petitioner *conceded* that Respondents' production was likely
to contain Treo's confidential information, and for good reason: the documents
sought by Petitioner all pertain to the confidential operation of the Fund and, as such,
include sensitive commercial communications between Treo and the Fund's Limited
Partner Advisory Committee (LPAC) regarding operation of the Fund. (IV-ER-
664–67; IV-ER-671–701). Second, as noted above, Petitioner *continues to seek* such

confidential documents, including documents involving Treo and the Fund's representatives, over which OPERF has asserted privilege. (I-FER-8). Should those documents be produced, there can be no serious question they would constitute, at bare minimum, the sort of sensitive and confidential information which gives rise to standing. And they would, of course, be subject to a Protective Order whose terms, at present, remain impermissibly broad and subject to abuse.[7]

In sum, Treo had standing to pursue both forms of relief it sought below in its own right and retains standing to appeal the district court's denial of the same.

## II. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING TREO'S MOTION FOR RECONSIDERATION

In challenging the district court's failure to grant Treo's motion for reconsideration, Treo argued principally that the district court had denied Treo's motion in a *single sentence*, one that applied the wrong standard and included no findings with respect to the standard actually applicable. Petitioner cannot dispute as much. Instead, in opposition, Petitioner scours other aspects of the district court's opinion in an effort to cobble together a rationale that might support denial of the motion under the standard that applied to Treo's motion. Those efforts fail.

---

[7] In the unlikely event this Court finds the record is not sufficiently developed on this point, it should remand with instructions to the district court to develop that record further. Because standing was not challenged below, Treo had no opportunity to develop a record and the district court had no reason to make factual findings in this respect.

As an initial matter, Petitioner points to the fact that the district court parroted the applicable standard below, namely that a motion for reconsideration is an "extraordinary remedy" which requires a movant to establish "new evidence (1) existed at the time of the original decision; (2) could not have been discovered through due diligence; and (3) was of such magnitude that it likely would have changed the disposition of the case." (I-ER-7 (quoting *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990))). While there is no dispute the district court cited that standard (in the legal overview section of its opinion), in addressing Treo's motion, the district court made no findings as to how any prong of that standard did or did not apply here. In particular, the district court made no finding that Treo had failed to identify new evidence, that such evidence could not have been discovered through due diligence, or that it was of such magnitude that it likely would have changed the disposition of the case. Instead, in a single sentence, the district court applied a *different* standard, claiming that Treo had failed to identify "evidence of Petitioner's 'chicanery.'" (I-ER-11) (citing *Glock v. Glock, Inc.*, 797 F.3d 1002, 1009 (11th Cir. 2015))). That is error and mandates reversal. *See, e.g.*, *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1037 (9th Cir. 2005) ("Applying the incorrect legal standard is an abuse of discretion.").

Petitioner attempts to fill that gap by pointing to other aspects of the district court's opinion that *might* support a finding that Treo had failed to identify "newly

discovered evidence." In particular, Petitioner contends that Treo failed to meet that prong of the standard because "the only 'evidence' proffered were circumstances arising entirely after the . . . order granting the Petition." (Opp. at 31). But that misconstrues Treo's motion and arguments both below and on appeal: Treo has argued throughout that it had concerns that Petitioner would abuse any relief afforded it – and misuse any documents produced – but was only able to develop *evidence* to support those concerns (which, again, were part of its initial briefing in opposition to the Petition) after the Petition was granted. That evidence includes: (i) Petitioner's misleading and deceptive behavior in drafting the Protective Order (all well after the Petition was granted), and (ii) Petitioner's subsequent use of documents obtained from Respondents in Summons IV and other proceedings – proceedings which Petitioner *expressly told* the district court were not part of the Petition. The district court did not meaningfully engage with any of that new evidence. Moreover, had the district court done so, and had the district court made the finding that such evidence did not warrant reconsideration, that, too, would be an abuse of discretion and would warrant reversal. *See, e.g.*, *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1110 (9th Cir. 2011) (quoting *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010)) (district court abuses its discretion where its finding is "without 'support in

inferences that may be drawn from the facts in the record'") (citing *United States v. Hinkson*, 585 F.3d 1247, 1261 (9th Cir. 2009)).[8]

Alternatively, Petitioner points to the district court's observation – in the separate context of addressing *Respondents'* motion to modify the protective order – that the district court's initial grant of the Petition "did not limit the use of materials to the proceedings identified by Petitioner, and neither Respondents nor Intervenors requested such a limitation in their oppositions." (I-ER-9). But that finding only *underscores* the district court's error, it does not resolve it: indeed, Treo's motion for reconsideration turns on the fact that Respondents and Treo were *misled* at the time of the briefing on original Petition, and to the extent they did not "request[] such a limitation in their oppositions" (Opp. at 39), it was because Petitioner *expressly disclaimed* such a broader use in its Petition and oral argument, all of which preceded the filing of such oppositions. (*See* II-ER-141–142, 148, 150). Had Petitioner truthfully revealed its intentions, Treo would not only have "requested" such a limitation but would have had further basis to oppose the initial Petition.

---

[8] Petitioner also proffers facts on appeal that have never been the subject of appropriate factual development of fact finding. For example, Petitioner argues that "[w]hen it filed the Petition, it did not know what it would find in the documents" or that it would seek to make use of the same in additional litigations. (*E.g.* Opp. at 28). Petitioner cites to nothing in support of that statement, and for good reason: the record is devoid of evidence to support it.

*Second*, and as argued more fully in Treo's opening brief, to the extent the district court applied *any* standard to Treo's motion, it was the wrong one: namely, the district court's single sentence denial of Treo's motion – in apparent reference to the Eleventh Circuit's decision in *Glock* – was that the Court "does not find that Intervenors and Respondents have provided evidence of Petitioner's 'chicanery.'" (I-ER-11). But even assuming that this factual finding could be squared with this record (it cannot), this Circuit does not require evidence of "chicanery" to warrant reconsideration of a grant of Section 1782 relief. Instead, because "the factual circumstances surrounding [the Section 1782] application . . . changed dramatically" – namely, the range of litigations in which Petitioner sought to use the documents had dramatically expanded – the district court should have reconsidered "whether the statutory requirements for discovery under § 1782 remain satisfied and whether, as a matter of the district court's discretion, discovery remains appropriate." *Khrapunov v. Prosyankin*, 931 F.3d 922, 923 (9th Cir. 2019). The district court did not do so. Indeed, the district court did not make *any* findings or appear to have any thought to whether the statutory and/or discretionary factors warranted reconsideration in light of Petitioner's conduct after such discovery was obtained.

Cases cited by Petitioner only further underscore the significance of that error. For example, Petitioner cites the Second Circuit's decision in *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136 (2d Cir. 2022), ostensibly for the

16

proposition that the "default rule" is that discovery obtained in a Section 1782 proceeding "may be used in other proceedings." (Opp. at 28). Not so. In *VR Advisory Services*, the Second Circuit held that the "possibility of use in a different *but independently qualifying proceeding* does not constitute an attempt to 'circumvent' a proof gathering restriction or policy of the United States or a foreign state." *VR Advisory Servs., Ltd.*, 27 F.4th at 158. (emphasis added). There, petitioner commenced a Section 1782 petition seeking discovery for use in proceedings in Nigeria (the "Nigerian Proceedings"). In response, the recipients of the 1782 subpoenas accused petitioner of relying on the Nigerian Proceedings as a "pretextual" basis for seeking discovery when, in fact, Nigeria actually sought the documents for use in a separate proceeding in England (the "English Proceeding"), to which the district court agreed, finding the English Proceeding would not independently qualify for Section 1782 relief and thus that use of documents in that proceeding was improper. *Id*. at 18. On appeal, the Second Circuit did not disturb the lower court's approach to the issue at hand – namely, the need to satisfy itself that the undisclosed proceeding would itself qualify for Section 1782 relief. However, on the record before it, the Second Circuit reached the opposite conclusion as to that issue, finding that "the English Proceeding *would independently qualify* as a 'proceeding in a foreign or international tribunal' within the meaning of the statute." *Id.* at 158 ("We have no doubt, therefore, that if Nigeria had sought to

17

obtain discovery under § 1782 in the first instance for use in the English Proceeding, such a request would satisfy the statutory requirements.").

The *VR Advisory Services* court did *precisely* what the district court here failed to do: it re-evaluated the 1782 petition in light of new evidence that documents were being used in proceedings other than those for which they were initially sought and it satisfied itself that the further uses met the statutory and discretionary factors for relief. Here, of course, the district court has not made any such findings. In particular, the district court made no finding that any of the additional litigations in which Petitioner has already made improper use of the disclosed documents "would independently qualify" for Section 1782 relief. Nor, as discussed below, did the district court take any steps to modify the Protective Order to ensure that, going forward, the documents could be used only in those proceedings that "independently qualify" for Section 1782 relief.

As such, the district court abused its discretion in summarily rejecting Treo's motion for reconsideration.[9]

---

[9] In its opening brief, Treo further highlighted the district court's erroneous observation that no party opposed further document production. (Br. at 8 n.4 (citing I-ER-2–11 ("No party appears to dispute that Respondents must comply with Petitioner's subpoenas."))). This Court does not need to directly address that error because there is no question Treo's motion for reconsideration – if granted – would result in the same outcome, i.e. no further document production (and further a return

### III. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING TREO'S MOTION TO MODIFY THE PROTECTIVE ORDER

The district court also abused its discretion by failing to modify the protective order in light of clear evidence that Petitioner (i) had intentionally hoodwinked Respondents, its litigation adversary and (ii) was using documents in a manner not understood by the district court or by Treo at the time the Petition was granted. As argued in Treo's opening brief, the district court once again provided *no explanation* of why it was denying Treo's motion, referring only to a rationale not applicable to Treo – i.e., that *Respondents*, who unlike Treo had participated in negotiations over the Protective Order, were "sophisticated parties" who had agreed to its terms. The district court offered no explanation of how or why that rationale should apply to Treo. Nor did it offer any other explanation *at all* of why Treo's very serious concerns about the scope of the Protective Order should be denied. That alone

---

of those documents previously produced). *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992) ("By filing a motion for reconsideration, Execuair gave the district court a clear opportunity to review the validity of its order."); *see also Morgan v. United States*, 60 F. App'x 180, 181 n.3 (9th Cir. 2003) ("Contrary to the government's contention, Morgan raised this issue in his motion for reconsideration, and thus it has not been waived."). Nevertheless, Petitioner's contention that "Treo did not directly oppose the motion to compel with a response brief" elevates form over substance to an absurd and untenable degree. Petitioner's motion to compel was filed pursuant to the original petition and Section 1782. (II-ER-243 ("Petition Novalpina GP file this Motion to Compel . . . pursuant to 28 U.S.C. § 1782.")). By attacking that original grant of authority, Treo necessarily opposed the motion to compel.

constitutes an abuse of discretion and warrants reversal. *Thomas v. Cnty. of Los Angeles*, 275 F. App'x 664, 667 (9th Cir. 2008) (unpublished) (mem.) ("[C]ourts abuse their discretion when they deny motions seeking modification of a protective order without explanation."); *Foltz v. State Farm Mut. Auto. Ins. Co*., 331 F.3d 1122, 1134 (9th Cir. 2003) (finding that where a district court "articulates no basis for [its conclusions]" it "abuse[s] its discretion.").

Unable to avoid that obvious conclusion, Petitioner articulates an entirely new theory on appeal that Treo somehow "waived" its objections to the Protective Order because Treo did not, as Petitioner would have it, anticipate, based on negotiations it was *not a part of*, that language inserted by Novalpina was intended to permit it to do things it has expressly told the Court it would not do. (Opp. at 37). The argument fails for two reasons: first, Petitioner never raised the argument below, and thus has itself waived any such argument on appeal. *Hillis v. Heineman*, 626 F.3d 1014, 1019 (9th Cir. 2010) ("[A]rguments . . . raised for the first time on appeal, [and] never argued before the district court, we deem . . . waived."). With some sleight of hand, Petitioner, in its brief, tries to rewrite history, citing to its argument below that the Protective Order had been "agree[d]" to by the parties as somehow advancing the argument it raises on appeal – i.e. that Treo waived any objections to the language in the protective order by not raising them sooner. (Opp. at 43 (citing II-ER-38)). Not so. Such an argument was never advanced to the district court and thus not

properly raised on appeal. *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 543 (9th Cir. 2016) ("the argument must be raised sufficiently for the trial court to rule on it") (citing *Whittaker Corp.*, 953 F.2d at 515).

But second, even assuming the argument had been raised below, no waiver occurred here because Treo unquestionably raised its concerns about the language of the Protective Order *before* the district court entered the judgment giving rise to this appeal. Indeed, as the cases relied upon by Petitioner make clear, establishing waiver on appeal requires showing that a party "fail[ed] to raise an objection to an issue *before judgment*." *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1140 (9th Cir. 2002)(emphasis added). Here, of course, that cannot be said of Treo and its objections to the Protective Order which were directly raised to the district court and gave rise to the judgment on appeal.

Alternatively, Petitioner seeks to rehash its standing argument, claiming that Treo has not established any "interest" in the Protective Order. (Opp. at 37). But that argument fails here for the reasons it fails above. Among other things, Petitioner *agreed* – as a condition of seeking the offending Protective Order – that its Petition "s[ought] documents that include non-public trade secrets, valuable research, development, commercial, financial, technical, and/or proprietary information of OPERF *and third parties for which special protection from public disclosure is warranted*[.]" (II-ER-259). It further agreed, as part of the same motion for entry

21

of a protective order, that Treo's confidential information was among those third parties whose documents its requests sought. (II-ER-271 ("TREO Asset Management, whose confidential information may be produced under the Subpoenas")). The district court adopted that rationale in entering the Protective Order.

Left with nothing else, Petitioner again recycles its argument that Section 1782 permits unfettered use of documents obtained "unless the district court decides otherwise." (Opp. at 40). But here, the district court had already agreed to enter a protective order – that is, it had already decided "otherwise" – based on the undisputed record before it about the sensitivity of the documents sought. And more important, as the cases relied upon by Petitioner for that proposition make clear, the appropriate remedy for concerns regarding misuse of confidential material is implementation of precisely the sort of restrictive protective order Treo sought and the district court failed to meaningfully entertain. *See, e.g.*, *Glock*, 797 F.3d at 1009 ("a party, for good cause, may also ask the § 1782 court to enter a protective order prohibiting use . . . of documents obtained under the statute"); *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017) ("common restrictions" such as a protective order, may be issued in 1782 proceedings to "restrain parties from using the discovery for other purposes, including as evidence in other litigations").

Here, the district court – having recognized the need for a protective order to protect the interests of Treo, among others – had an obligation to meaningfully consider the implications of the Order it adopted on Treo's interests. It failed to do so. Indeed, whatever can be said of its analysis of Respondents' role as "sophisticated parties" in negotiating the agreement, the Court offered no explanation *at all* of why Treo's interests should not be meaningfully protected.

## CONCLUSION

For the foregoing reasons, Intervenors respectfully request that this Court REVERSE the district court's order denying reconsideration and a modification of the Protective Order. In particular, this Court should reverse the district court's denial of the Motion for Reconsideration and direct the district court to order all discovery produced by Respondents to date be returned. Alternatively, this Court should reverse the district court's denial of Treo's Motion for Modification of the Protective Order, and order that the modified Protective Order be applied to all discovery produced pursuant to the Petition and that any document shared with non-parties be returned.

Dated: February 18, 2025        Respectfully submitted,

                         */s/ Edward B. Diskant*

                         Edward B. Diskant
                         MCDERMOTT WILL & EMERY

One Vanderbilt Avenue
New York, NY 10017-3852
(212) 547 5754
ediskant@mwe.com

Sagar K. Ravi
McDermott Will & Emery
500 North Capital Street, NW
Washington, DC 20001
(202) 756 8043
sravi@mwe.com

*Attorneys for Intervenor-Appellant*
*Treo Asset Management LLC & Treo NOAL*
*GP SARL*

## <u>FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS</u>

**9th Cir. Case Number(s): <u>24-4835</u>**

I am the attorney or self-represented party.

**This brief contains <u>5,976</u> words,** including <u>0</u> words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** <u>s/ *Edward B. Diskant*</u>            **Date:** <u>2/18/2025</u>